IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 21- |
| v. | : | DATE FILED: October 28, 2021 |
| JOSEPH CAMMARATA | : | VIOLATION: |
| ERIK COHEN | | 18 U.S.C. § 1349 (conspiracy – 1 count) |
| DAVID PUNTURIERI | : | Notice of forfeiture |

## INDICTMENT

### COUNT ONE

**THE GRAND JURY CHARGES THAT:**

At all times material to this Indictment:

1. Alpha Plus Recovery, LLC ("Alpha Plus") was incorporated in the State of New Jersey on August 21, 2014. Alpha Plus was in the business of aggregating claims on behalf of individuals or institutional shareholders who had a right to claim monetary recovery from securities fraud class action settlements.

2. Defendants JOSEPH CAMMARATA, ERIK COHEN, and DAVID PUNTURIERI owned, operated, and managed Alpha Plus. Defendants CAMMARATA, COHEN, and PUNTURIERI all had signature authority over Alpha Plus bank accounts.

3. Under federal law, corporations and other participants in United States' securities markets bear certain responsibilities to investors who buy and sell securities in those markets. Investors who suffer losses as the result of violations of the federal securities laws can sue the entities they believe to be responsible for their losses. These types of lawsuits are commonly called securities fraud lawsuits.

4. Most often, the losses that a particular individual suffers as the result of a

1

violation of the federal securities laws are not great enough to warrant that individual investor in bringing a lawsuit to recover its losses. At the same time, because the violation may affect a very large number of investors, the aggregate damages suffered by all investors as a result of the violation of federal securities laws do warrant the expenditure of resources to engage in litigation to recover the claimed damages.

5. A securities class action, or securities fraud class action, was a lawsuit filed by an investor or a small group of investors on behalf of all of the investors who bought or sold a company's publicly traded securities within a specific period of time and suffered economic injury as a result of violations of the securities laws.

6. The Securities and Exchange Commission ("SEC") was a federal agency charged with enforcing the federal securities laws. The SEC was empowered to file enforcement actions to recover damages for violations of the securities laws.

7. As a matter of law, the settlement of federal securities class actions and federal securities fraud class actions require the approval of a federal court, which considers the fairness and propriety of the proposed settlement before granting approval. As a practical matter, because such settlements often involve very large numbers of injured investors, they frequently involve very large amounts of money. Even after the payment of attorneys' fees and expenses, such settlements result in substantial pools of funds that have to be equitably divided among large numbers of investors.

8. The court-approved settlement agreement of a securities class action case typically provides a formula or series of formulas for the distribution of settlement proceeds among the class of injured investors. In virtually all cases, neither the plaintiff investors nor defendant companies involved in securities class action cases are equipped to undertake the

detailed and painstaking tasks required to follow the settlement formulas and make the distributions in accordance with the federal court decree.

9. As a result, third-party firms, known as "claims administrators" are generally involved when securities class action or SEC enforcement actions are settled. Claims administrators are approved by the court overseeing the settlement to administer the settlement fund by undertaking myriad actions such as identifying and approving qualified claimants, calculating the damage award appropriate for each claimant, and tendering and accounting for each payment from the settlement fund. In carrying out these tasks, claims administrators rely almost entirely on information submitted to them by the claimants or by parties acting on behalf of claimants.

10. Because the burdens of submitting and substantiating claims may outweigh the amount expected to be received from the award, many individual members of a class action settlement may be unwilling to submit claims even where such claims are entirely legitimate and would be fully supported. Because of this reluctance, firms known as "claims aggregators" act on behalf of investor-members of securities class actions. Such claims aggregators do the work of assembling the relevant supporting material needed to verify the claims, submitting the resulting claims to the appropriate claims administrator, tracking the status of the pending claims, and paying the resulting settlements to their clients. For these services, claims aggregators are generally paid a percentage of the funds recovered by their clients, typically 20% to 40%.

11. Alpha Plus was a claims aggregator purporting to act on behalf of clients who claimed entitlement to settlements from securities class action and SEC enforcement action settlements. All claimants to such settlements, including those represented by claims aggregators such as Alpha Plus, were required to show two essential facts in order to qualify for an award of

funds. First, claimants needed to demonstrate that they had bought shares of the subject security during the time period set forth in the court-approved settlement agreement that resolved the securities class action lawsuit. Second, claimants also needed to show they had suffered damages as a result of their purchase of securities. Generally, such damages were established by proving when the securities had been purchased and sold, and the price that the claimant had paid and received for the securities.

12. Alpha Plus submitted claims, usually by the United States Mail, to claims administrators in the Eastern District of Pennsylvania and elsewhere on behalf of clients seeking damages from a securities class action or SEC enforcement action. The claims included an authorization to file on behalf of the allegedly injured claimant and a spreadsheet identifying the purchase and sale transactions in the subject security during the relevant time period.

13. Strategic Claims Services ("Strategic Claims") was a class action claims administrator based in Media, Pennsylvania.

14. Heffler Claims ("Heffler") was a class action claims administrator based in Philadelphia, Pennsylvania.

15. RG2 Claims Administration ("RG2") was a class action claims administrator based in Philadelphia, Pennsylvania.

16. According to records submitted by Alpha Plus to various claims administrators, Nimello Holding LLC ("Nimello Holding") was an Alpha Plus client. Alpha Plus submissions claimed that Nimello Holding was a hedge fund located in Gibraltar, and its legal representative was an individual identified here as "T.C."

17. An entity called Nimello Holding LLC was incorporated in New Jersey in 2015 by defendant DAVID PUNTURIERI. Incorporation documents list defendants PUNTURIERI,

ERIK COHEN, and JOSEPH CAMMARATA as officers and directors.

18. Defendants JOSEPH CAMMARATA, ERIK COHEN, and DAVID PUNTURIERI opened a bank account at PNC Bank in the name of Nimello Holding.

19. According to records submitted by Alpha Plus to claims administrators, Quartis Trade and Investment LLC ("Quartis Trade") was an Alpha Plus client. Alpha Plus submissions claimed that Quartis Trade was a hedge fund located in Nassau, Bahamas, and its legal representative was an individual identified here as "S.D."

20. An entity called Quartis Trade and Investment LLC was incorporated in New Jersey in 2014 by defendant ERIK COHEN. Incorporation documents list defendants COHEN and DAVID PUNTURIERI as members/managers of Quartis Trade. Quartis Trade added defendant JOSEPH CAMMARATA as an owner in October 2017.

21. Starting in April 2015, defendants JOSEPH CAMMARATA, ERIK COHEN, and DAVID PUNTURIERI opened bank accounts at PNC Bank, TD Bank, and Investors Bank in the name of Quartis Trade.

22. According to records submitted by Alpha Plus to claims administrators, Inversiones Invergasa SAS ("Invergasa SAS") was an Alpha Plus client located in Bogota, Colombia.

23. From at least in or about August 2014 through in or about January 2021, in the Eastern District of Pennsylvania, and elsewhere, defendants

**JOSEPH CAMMARATA,
ERIK COHEN,
and
DAVID PUNTURIERI**

conspired and agreed together and with other persons known and unknown to the grand jury, to

commit mail fraud and wire fraud, that is, to knowingly execute and attempt to execute a scheme to defraud claims administrators, investor-claimants, and securities class action defendants, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, in violation of 18 U.S.C. §§ 1341, 1343.

## MANNER AND MEANS

It was part of the conspiracy that defendants JOSEPH CAMMARATA, ERIK COHEN, and DAVID PUNTURIERI, and others known and unknown to the grand jury:

24. Created what purported to be independent entities, but which were in fact owned or controlled by the defendants, and used those entities to make false claims in securities class action and SEC enforcement action settlements.

25. Made false and fraudulent claims on behalf of supposed Alpha Plus clients to claims administrators Strategic Claims, Heffler, and RG2 in the Eastern District of Pennsylvania, and to other claims administrators throughout the country.

26. Communicated with claims administrators in the Eastern District of Pennsylvania and elsewhere by United States Mail, electronic mail, and interstate telephone calls in support of their false and fraudulent claims.

27. Made material misrepresentations to claims administrators about securities trading that had purportedly been done by supposed Alpha Plus clients. In particular, defendants JOSEPH CAMMARATA, ERIK COHEN, and DAVID PUNTURIERI caused Alpha Plus to submit claims on behalf of Nimello Holding, Quartis Trade, and Invergasa SAS, which claims falsely and fraudulently represented that Nimello Holding, Quartis Trade, and Invergasa SAS had purchased and sold securities that were the subject of class action lawsuits or SEC enforcement actions.

28. Created false names of supposed Alpha Plus employees when communicating with claims administrators.

29. Created fictitious brokerage documents purporting to show purchases and sales of securities subject to class action and SEC enforcement action settlements.

30. Provided fictitious brokerage documents to claims administrators to support false and fraudulent claims.

31. Impersonated individuals purportedly in control of Alpha Plus clients, such as T.C. and S.D., in communications with claims administrators who were attempting to determine the legitimacy of claims submitted by Alpha Plus.

32. Impersonated individuals purportedly employed by brokerage firms in conversations with claims administrators who were attempting to determine the legitimacy of claims submitted by Alpha Plus.

33. Falsely denied ownership or control of Alpha Plus in conversations with claims administrators who were attempting to determine the legitimacy of claims submitted by Alpha Plus.

34. Received approximately $40 million from claims administrators based on false, fraudulent, and materially misrepresented claims they made on behalf of Nimello Holding, Quartis Trade, and Invergasa SAS.

35. Transferred funds fraudulently obtained from claims administrators into accounts defendants JOSEPH CAMMARATA, ERIK COHEN, and DAVID PUNTURIERI controlled.

All in violation of Title 18, United States Code, Section 1349.

## NOTICE OF FORFEITURE

### THE GRAND JURY FURTHER CHARGES THAT:

1. As a result of the violation of Title 18, United States Code, Section 1349, set forth in this Indictment, defendants

**JOSEPH CAMMARATA,
ERIK COHEN,
and
DAVID PUNTURIERI**

shall forfeit to the United States of America any property, real or personal, constituting, or derived from, proceeds obtained traceable to such violation, including, but not limited to $40,000,000:

2. If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the Court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other

property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 28 United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C).

A TRUE BILL:

_____
GRAND JURY FOREPERSON

*Ronald Barock* for
_____
JENNIFER ARBITTIER WILLIAMS
ACTING UNITED STATES ATTORNEY

No._____

**UNITED STATES DISTRICT COURT**

Eastern District of Pennsylvania

Criminal Division

THE UNITED STATES OF AMERICA

v.

JOSEPH CAMMARATA, ERIK COHEN, DAVID PUNTURIERI

INDICTMENT

Counts
18 U.S.C. § 1349 (conspiracy – 1 count)
Notice of forfeiture

A true bill

_____
Foreman

Filed in open court this _____day,
Of _____A.D. 20_____

Clerk

Bail, $_____