No.\_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_

## UNITED STATES DISTRICT COURT

Eastern District of Pennsylvania

Criminal Division

## THE UNITED STATES OF AMERICA

v.

## JOSEPH CAMMARATA, ERIK COHEN, DAVID PUNTURIERI

### SUPERSEDING INDICTMENT

Counts

18 U.S.C. § 1349 (conspiracy – 1 count); 18 U.S.C. § 1343 (wire fraud – 4 counts); 18 U.S.C. § 1956(h) (money laundering conspiracy- 1 count); 18 U.S.C. § 1956 (money laundering – 4 counts); 18 U.S.C. § 1957 (money laundering – 2 counts); Notices of forfeiture

_____

Foreman

Filed in open court this ___ own ___ day,
Of September A.D. 20 22

_____

Clerk

Bail, $ _____

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 21-427 |
| v. | : | DATE FILED: September 8, 2022 |
| JOSEPH CAMMARATA | : | VIOLATIONS: |
| ERIK COHEN | | 18 U.S.C. § 1349 (conspiracy – 1 count) |
| DAVID PUNTURIERI | : | 18 U.S.C. § 1343 (wire fraud – 4 counts) |
| | | 18 U.S.C. § 1956(h) (money laundering |
| | : | conspiracy- 1 count) |
| | | 18 U.S.C. § 1956 (money laundering - |
| | : | 4 counts) |
| | | 18 U.S.C. § 1957 (money laundering – |
| | : | 2 counts) |
| | | Notices of forfeiture |

### SUPERSEDING INDICTMENT

### COUNT ONE
(Mail and Wire Fraud Conspiracy)

**THE GRAND JURY CHARGES THAT:**

At all times material to this Indictment:

1.      Alpha Plus Recovery, LLC ("Alpha Plus") was incorporated in the State of New Jersey on August 21, 2014. Alpha Plus was in the business of aggregating claims on behalf of individuals or institutional shareholders who had a right to claim monetary recovery from securities fraud class action settlements.

2.      Defendants JOSEPH CAMMARATA, ERIK COHEN, and DAVID PUNTURIERI owned, operated, and managed Alpha Plus. Defendants CAMMARATA, COHEN, and PUNTURIERI all had signature authority over Alpha Plus bank accounts.

3.      Under federal law, corporations and other participants in United States" securities markets bear certain responsibilities to investors who buy and sell securities in those

1

markets. Investors who suffer losses as the result of violations of the federal securities laws can sue the entities they believe to be responsible for their losses. These types of lawsuits are commonly called securities fraud lawsuits.

        4.      Most often, the losses that a particular individual suffers as the result of a violation of the federal securities laws are not great enough to warrant that individual investor in bringing a lawsuit to recover its losses. At the same time, because the violation may affect a very large number of investors, the aggregate damages suffered by all investors as a result of the violation of federal securities laws do warrant the expenditure of resources to engage in litigation to recover the claimed damages.

        5.      A securities class action, or securities fraud class action, was a lawsuit filed by an investor or a small group of investors on behalf of all of the investors who bought or sold a company's publicly traded securities within a specific period of time and suffered economic injury as a result of violations of the securities laws.

        6.      The Securities and Exchange Commission ("SEC") was a federal agency charged with enforcing the federal securities laws. The SEC was empowered to file enforcement actions to recover damages for violations of the securities laws.

        7.      As a matter of law, the settlement of federal securities class actions and federal securities fraud class actions require the approval of a federal court, which considers the fairness and propriety of the proposed settlement before granting approval. As a practical matter, because such settlements often involve very large numbers of injured investors, they frequently involve very large amounts of money. Even after the payment of attorneys' fees and expenses, such settlements result in substantial pools of funds that have to be equitably divided among large numbers of investors.

2

8.      The court-approved settlement agreement of a securities class action case typically provides a formula or series of formulas for the distribution of settlement proceeds among the class of injured investors. In virtually all cases, neither the plaintiff investors nor defendant companies involved in securities class action cases are equipped to undertake the detailed and painstaking tasks required to follow the settlement formulas and make the distributions in accordance with the federal court decree.

9.      As a result, third-party firms, known as "claims administrators" are generally involved when securities class action or SEC enforcement actions are settled. Claims administrators are approved by the court overseeing the settlement to administer the settlement fund by undertaking myriad actions such as identifying and approving qualified claimants, calculating the damage award appropriate for each claimant, and tendering and accounting for each payment from the settlement fund. In carrying out these tasks, claims administrators rely almost entirely on information submitted to them by the claimants or by parties acting on behalf of claimants.

10.      Because the burdens of submitting and substantiating claims may outweigh the amount expected to be received from the award, many individual members of a class action settlement may be unwilling to submit claims even where such claims are entirely legitimate and would be fully supported. Because of this reluctance, firms known as "claims aggregators" act on behalf of investor-members of securities class actions. Such claims aggregators do the work of assembling the relevant supporting material needed to verify the claims, submitting the resulting claims to the appropriate claims administrator, tracking the status of the pending claims, and paying the resulting settlements to their clients. For these services, claims aggregators are generally paid a percentage of the funds recovered by their clients,

3

typically 20% to 40%.

11.     Alpha Plus was a claims aggregator purporting to act on behalf of clients who claimed entitlement to settlements from securities class action and SEC enforcement action settlements. All claimants to such settlements, including those represented by claims aggregators such as Alpha Plus, were required to show two essential facts in order to qualify for an award of settlement funds. First, claimants needed to demonstrate that they had bought shares of the subject security during the time period set forth in the court-approved settlement agreement that resolved the securities class action lawsuit. Second, claimants also needed to show they had suffered damages as a result of their purchase of securities. Generally, such damages were established by proving when the securities had been purchased and sold, and the price that the claimant had paid and received for the securities.

12.     Alpha Plus submitted claims, usually by the United States Mail, to claims administrators in the Eastern District of Pennsylvania and elsewhere purportedly on behalf of clients seeking damages from a securities class action lawsuit or SEC enforcement action. The claims included an authorization to file on behalf of the allegedly injured claimant and a spreadsheet identifying the purchase and sale transactions in the subject security during the relevant time period.

13.     Strategic Claims Services ("Strategic Claims") was a class action claims administrator based in Media, Pennsylvania.

14.     Heffler Claims ("Heffler") was a class action claims administrator based in Philadelphia, Pennsylvania.

15.     RG2 Claims Administration ("RG2") was a class action claims administrator based in Philadelphia, Pennsylvania.

4

16.     According to records submitted by Alpha Plus to various claims administrators, Nimello Holding LLC ("Gibraltar Nimello") was an Alpha Plus client. Alpha Plus submissions claimed that Gibraltar Nimello was a hedge fund located in Gibraltar, and that its legal representative was an individual identified here as "T.C."

17.     An entity called Nimello Holding LLC ("NJ Nimello") was incorporated in New Jersey in 2015 by defendant DAVID PUNTURIERI. Incorporation documents list defendants PUNTURIERI, ERIK COHEN, and JOSEPH CAMMARATA as officers and directors of NJ Nimello.

18.     Defendants JOSEPH CAMMARATA, ERIK COHEN, and DAVID PUNTURIERI opened a bank account at PNC Bank in the name of NJ Nimello.

19.     According to records submitted by Alpha Plus to claims administrators, Quartis Trade and Investment LLC ("Bahamas Quartis") was an Alpha Plus client. Alpha Plus submissions claimed that Bahamas Quartis was a hedge fund located in Nassau, Bahamas, and that its legal representative was an individual identified here as "S.D."

20.     An entity called Quartis Trade and Investment LLC ("NJ Quartis") was incorporated in New Jersey in 2014 by defendant ERIK COHEN. Incorporation documents list defendants COHEN and DAVID PUNTURIERI as members/managers of NJ Quartis. NJ Quartis added defendant JOSEPH CAMMARATA as an owner in October 2017.

21.     Starting in April 2015, defendants JOSEPH CAMMARATA, ERIK COHEN, and DAVID PUNTURIERI opened bank accounts at PNC Bank, TD Bank, and Investors Bank in the name of NJ Quartis.

22.     According to records submitted by Alpha Plus to claims administrators, Inversiones Invergasa SAS ("Invergasa") was an Alpha Plus client located in Bogota, Colombia.

5

23.     From at least in or about August 2014 through in or about November 3,

2021, in the Eastern District of Pennsylvania, and elsewhere, defendants

**JOSEPH CAMMARATA,**
**ERIK COHEN, and**
**DAVID PUNTURIERI**

conspired and agreed together and with other persons known and unknown to the grand jury, to

commit mail fraud and wire fraud, that is, to knowingly execute and attempt to execute a scheme

to defraud claims administrators, investor-claimants, and securities class action and SEC

enforcement action defendants, and to obtain money and property by means of false and

fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code,

Sections 1341 and 1343.

**MANNER AND MEANS**

It was part of the conspiracy that defendants JOSEPH CAMMARATA, ERIK

COHEN, and DAVID PUNTURIERI, and others known and unknown to the grand jury:

24.     Created what purported to be independent entities, but which were in fact

owned or controlled by the defendants, and used those entities to make false claims in securities

class action and SEC enforcement action settlements.

25.     Made false and fraudulent claims on behalf of supposed Alpha Plus clients

to claims administrators Strategic Claims, Heffler, and RG2 in the Eastern District of

Pennsylvania, and to other claims administrators throughout the country.

26.     Communicated with each other and with claims administrators in the

Eastern District of Pennsylvania and elsewhere by United States Mail, and by interstate

electronic mail, text messages, and telephone calls in support of their false and fraudulent claims.

6

27. Made material misrepresentations to claims administrators about securities trading that had purportedly been done by supposed Alpha Plus clients. In particular, defendants JOSEPH CAMMARATA, ERIK COHEN, and DAVID PUNTURIERI caused Alpha Plus to submit claims on behalf of Gibraltar Nimello, Bahamas Quartis, and Invergasa SAS, which claims falsely and fraudulently represented that Gibraltar Nimello, Bahamas Quartis, and Invergasa had purchased and sold securities that were the subject of class action lawsuits or SEC enforcement actions.

28. Used false names of supposed Alpha Plus employees when communicating with claims administrators.

29. Created fictitious brokerage documents purporting to show purchases and sales of securities subject to class action and SEC enforcement action settlements.

30. Provided fictitious brokerage documents to claims administrators to support false and fraudulent claims.

31. Impersonated individuals purportedly in control of Alpha Plus clients, such as T.C. and S.D., in communications with claims administrators who were attempting to determine the legitimacy of claims submitted by Alpha Plus.

32. Impersonated individuals purportedly employed by brokerage firms in conversations with claims administrators who were attempting to determine the legitimacy of claims submitted by Alpha Plus.

33. Falsely denied ownership or control of Alpha Plus in conversations with claims administrators who were attempting to determine the legitimacy of claims submitted by Alpha Plus.

7

34.     Received approximately $40 million from claims administrators based on false, fraudulent, and materially misrepresented claims they made on behalf of Gibraltar Nimello, Bahamas Quartis, and Invergasa.

35.     Deposited the fraud proceeds received from claims administrators into bank accounts titled in the name of Alpha Plus, NJ Quartis, and NJ Nimello, and controlled by the defendants, at PNC, TD, and Investors banks.   .

All in violation of Title 18, United States Code, Section 1349.

8

## COUNTS TWO THROUGH FIVE
### (Wire Fraud)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs One through 22 of Count One are realleged here.

### THE SCHEME

2.      From at least in or about August 2014 through in or about November 3,

2021, in the Eastern District of Pennsylvania, and elsewhere, defendants

### JOSEPH CAMMARATA,
### ERIK COHEN, and
### DAVID PUNTURIERI

devised and intended to devise a scheme to defraud claims administrators, including Strategic

Claims, Heffler, and RG2, along with investor-claimants and securities class action and SEC

enforcement defendants, and to obtain money and property by means of false and fraudulent

pretenses, representations and promises.

### MANNER AND MEANS

It was part of the scheme that:

3.      Paragraphs 24 through 35 of Count One are realleged here.

4.      Defendants JOSEPH CAMMARATA, ERIK COHEN, and DAVID

PUNTURIERI made false and fraudulent claims from New Jersey on behalf of Gibraltar

Nimello, Bahamas Quartis, and Invergasa to claims administrators, including Strategic Claims,

Heffler, and RG2 in the Eastern District of Pennsylvania and elsewhere.

5.      On or about November 8, 2019, an employee of Strategic Claims sent an

email to an Alpha Plus account controlled by defendant DAVID PUNTURIERI requesting

clearing firm names and contact information for a list of Alpha Plus clients, including for

9

Gibraltar Nimello and Bahamas Quartis, making claims in the Twitter litigation.

6.     On or about November 8, 2019, an employee of Strategic Claims sent an email to an Alpha Plus account controlled by defendant DAVID PUNTURIERI requesting clearing firm names and contact information for a list of Alpha Plus clients, including for Gibraltar Nimello and Bahamas Quartis, making claims in the Prothena litigation.

7.     On or about November 15, 2019, defendant DAVID PUNTURIERI, at the direction of defendant JOSEPH CAMMARATA, sent an email to an employee of Strategic Claims, in the Eastern District of Pennsylvania, responding to the request for clearing firms made for the Twitter litigation claims. Defendant PUNTURIERI attached a spreadsheet with a list of brokerage firms for each client. For Gibraltar Nimello and Bahamas Quartis, the brokerage firm was identified as Speedroute, and the provided Speedroute point of contact was defendant CAMMARATA.

8.     On or about November 15, 2019, an employee of Strategic Claims responded to the email account controlled by defendant DAVID PUNTURIERI pointing out that the list that defendant PUNTURIERI had sent was not in fact a list of valid clearing firms. Later that same day, defendant PUNTURIERI discussed with defendants JOSEPH CAMMARATA and ERIK COHEN how to respond to this email from Strategic Claims. Following the direction of defendant CAMMARATA, defendant PUNTURIERI sent an email to Strategic Claims apologizing and stating that Alpha Plus would reach out to their clients the upcoming Monday, November 18, 2019.

9.     On or about November 18, 2019, an employee of Strategic Claims sent an email to an Alpha Plus account controlled by defendant DAVID PUNTURIERI rejecting claims Alpha Plus made on behalf of Gibraltar Nimello and Bahamas Quartis in the Prothena litigation.

10

10.     On or about November 19, 2019, at about 4:00pm, defendant DAVID PUNTURIERI, at the direction of defendant JOSEPH CAMMARATA, sent an email to an employee of Strategic Claims with a revised list of Alpha Plus's clients' custodians. On this new list, the clearing firms for Gibraltar Nimello and Bahamas Quartis were listed as ICBC and Apex Clearing. The point of contact for both remained defendant CAMMARATA.

11.     On or about November 20, 2019, an employee of Strategic Claims sent an email to an Alpha Plus account controlled by defendant DAVID PUNTURIERI rejecting claims Alpha Plus made on behalf of Gibraltar Nimello and Bahamas Quartis in connection with the Twitter securities litigation.

12.     On or about December 3, 2019, defendant JOSEPH CAMMARATA left a voicemail for an employee of Strategic Claims in response to the rejection by Strategic Claims of claims Alpha Plus made on behalf of Gibraltar Nimello and Bahamas Quartis. In this voicemail, defendant CAMMARATA falsely stated that he was calling on behalf of brokerage clients and that he had been trying to get in touch with Alpha Plus on behalf of his brokerage clients.

13.     On or about January 2, 2020, an employee of Strategic Claims sent an email to an Alpha Plus account controlled by defendant DAVID PUNTURIERI rejecting claims made by Alpha Plus on behalf of Invergasa in connection with the Concordia International litigation.

14.     On or about January 2, 2020, defendant DAVID PUNTURIERI forwarded the January 2, 2020 rejection email from Strategic Claims to defendants JOSEPH CAMMARATA and ERIK COHEN.

15.     On January 2, 2020, defendant JOSEPH CAMMARATA prepared an email to be sent to Strategic Claims in response to the Concordia International litigation

11

rejection. Defendant CAMMARATA's response falsely claimed that Alpha Plus's "Clients are hedge funds and active traders that deal with several clearing firms and brokers within the same accounts." Defendant CAMMARATA provided this response to defendant PUNTURIERI.

16.     On or about January 2, 2020, defendant DAVID PUNTURIERI copied the language defendant JOSEPH CAMMARATA had provided and sent it by email to Strategic Claims in the Eastern District of Pennsylvania.

17.     On or about each of the dates set forth below, in Philadelphia, in the Eastern District of Pennsylvania, and elsewhere, defendants

**JOSEPH CAMMARATA,**
**ERIK COHEN, and**
**DAVID PUNTURIERI**

for the purpose of executing the scheme described above, and attempting to do so, caused to be transmitted by means of wire communication in interstate commerce between New Jersey and Pennsylvania the signals and sounds described below for each count, each transmission constituting a separate count:

| COUNT | DATE | DESCRIPTION |
|:---:|---|---|
| 2 | November 15, 2019 | Email from defendant DAVID PUNTURIERI to Strategic Claims enclosing list of brokerage firms and identifying point of contact as defendant JOSEPH CAMMARATA. |
| 3 | November 19, 2019 | Email from defendant DAVID PUNTURIERI to an employee of Strategic Claims with a revised list of Alpha Plus's clients' custodians and identifying the point of contact as defendant JOSEPH CAMMARATA. |

12

| COUNT | DATE | DESCRIPTION |
|:-----:|:-----|:------------|
| 4 | December 3, 2019 | Telephone call from defendant JOSEPH CAMMARATA to Strategic Claims |
| 5 | January 2, 2020 | Email from defendant DAVID PUNTURIERI to Strategic Claims enclosing the language provided by defendant JOSEPH CAMMARATA. |

All in violation of Title 18, United States Code, Sections 1343 and 1349.

## COUNT SIX
### (Money Laundering Conspiracy)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.   Paragraphs One through 22 of Count One are realleged here.

2.   At all times relevant to this indictment, the following were financial

institutions as defined in Title 18, United States Code, Section 1956:

        a.   PNC Bank ("PNC");

        b.   TD Bank ("TD");

        c.   Investors Bank ("Investors");

        d.   Bank of America ("B of A");

        e.   Columbia Bank ("Columbia");

        f.   Metropolitan Commercial Bank ("Metropolitan"); and

        g.   Merrill Lynch, Pierce, Fenner & Smith ("Merrill").

3.   From at least in or about August 2014 through in or about November 3,

2021, in the Eastern District of Pennsylvania, and elsewhere, defendants

### JOSEPH CAMMARATA,
### ERIK COHEN, and
### DAVID PUNTURIERI

knowingly and willfully conspired and agreed together and with other persons known and

unknown to the grand jury, to commit offenses under Title 18, United States Code,

Sections 1956 and 1957, as follows:

        a.   To conduct and attempt to conduct financial transactions affecting

interstate commerce, which transactions involved the proceeds of specified unlawful activity,

that is, wire fraud in violation of Title 18, United States Code, Sections 1343; knowing that the

14

transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and,

                  b.       To knowingly engage or attempt to engage in monetary transactions in criminally-derived property that was of a value greater than $10,000 in violation of Title 18, United States Code, Section 1957.

## MANNER AND MEANS

It was part of the conspiracy that defendants JOSEPH CAMMARATA, ERIK COHEN, and DAVID PUNTURIERI, and others known and unknown to the grand jury:

4.       Paragraphs 24 through 35 of Count One are realleged here.

5.       Created New Jersey entities, NJ Nimello and NJ Quartis with names that were similar to Gibraltar Nimello and Bahamas Quartis, but which entities were owned and controlled by the defendants.

6.       Directed that payments made on the false and fraudulent claims that they submitted on behalf of supposed Alpha Plus clients, including NJ Nimello and NJ Quartis, be sent to Alpha Plus in New Jersey by claims administrators in the Eastern District of Pennsylvania, such as Strategic Claims, Heffler, and RG2, and to other claims administrators throughout the country.

7.       Used the account at PNC bank titled in the name of NJ Nimello to receive fraud proceeds obtained from claims administrators that were moved to that account from accounts titled in the name of Alpha Plus at PNC and TD banks.

15

8.     Used the accounts at PNC and Investors banks titled in the name of NJ Quartis to receive fraud proceeds obtained from claims administrators that were moved to those accounts from accounts titled in the name of Alpha Plus at PNC and TD banks.

9.     Used the account at TD bank titled in the name of Advanced Tech NJ LLC ("Advanced Tech") to receive fraud proceeds obtained from claims administrators that were moved to that account from accounts titled in the name of Alpha Plus at PNC and TD banks. Advanced Tech was owned and controlled by defendants ERIK COHEN and DAVID PUNTURIERI.

10.     Used the TD bank account in the name of SSA Technologies LLC ("SSA Tech") to receive fraud proceeds obtained from claims administrators that were moved to that account from accounts titled in the name of Alpha Plus at PNC and TD banks. SSA Tech was owned and controlled by defendants JOSEPH CAMMARATA, ERIK COHEN, and DAVID PUNTURIERI.

11.     Used the accounts at B of A and TD banks titled in the name of ADP Consulting LLC ("ADP Consulting") to receive fraud proceeds obtained from claims administrators that were moved to those accounts from accounts titled in the name of Alpha Plus at PNC and TD banks. ADP Consulting was owned and controlled by defendant DAVID PUNTURIERI.

12.     Used the accounts at B of A and TD banks titled in the name of Nine Six Tech Inc. ("Nine Six") to receive fraud proceeds obtained from claims administrators that were moved to those accounts from accounts titled in the name of Alpha Plus at PNC and TD banks. Nine Six was owned and controlled by defendant DAVID PUNTURIERI.

16

13.     Used the account at TD bank titled in the name of Andena Technologies LLC ("Andena Tech") to receive fraud proceeds obtained from claims administrators that were moved to that account from accounts titled in the name of Alpha Plus at PNC and TD banks. Andena Tech was owned and controlled by defendant DAVID PUNTURIERI.

14.     Used the accounts at B of A and TD banks titled in the name of WOT Trading LLC ("WOT Trading") to receive fraud proceeds obtained from claims administrators that were moved to those accounts from accounts titled in the name of Alpha Plus at PNC and TD banks. WOT Trading was owned and controlled by defendant ERIK COHEN.

15.     Used the accounts at Columbia and TD banks titled in the name of Present Six LLC ("Present Six") to receive fraud proceeds obtained from claims administrators that were moved to those accounts from accounts titled in the name of Alpha Plus at PNC and TD banks. Present Six was owned and controlled by defendant ERIK COHEN.

16.     Used the account at TD bank titled in the name of Newer Ventures LLC ("Newer Ventures") to receive fraud proceeds obtained from claims administrators that were moved to that account from accounts titled in the name of Alpha Plus at PNC and TD banks. Newer Ventures was owned and controlled by defendant ERIK COHEN.

17.     Used the accounts at TD and Metropolitan banks and at Merrill, all titled in the name of PB Trade LLC ("PB Trade"), to receive fraud proceeds obtained from claims administrators that were moved to those accounts from accounts titled in the name of Alpha Plus at PNC and TD banks. PB Trade was owned and controlled by defendant JOSEPH CAMMARATA.

18.     Used the account at TD bank titled in the name of Misc Holdings Corp. ("Misc Holdings") to receive fraud proceeds obtained from claims administrators that were

17

moved to that account from accounts titled in the name of Alpha Plus at PNC and TD banks. Misc Holdings was owned and controlled by defendant JOSEPH CAMMARATA.

19.     Used the funds from the accounts titled in the names of NJ Nimello, NJ Quartis, Advanced Tech, SSA Tech, ADP Consulting, Nine Six, Andena Tech, WOT Trading, Present Six, Newer Ventures, PB Trade, and Misc Holdings for the personal benefit of defendants JOSEPH CAMMARATA, ERIK COHEN, and DAVID PUNTURIERI.

20.     Carried out or caused to be carried out transactions with fraud proceeds originating at least in part in the Eastern District of Pennsylvania, including the following:

a.     On or about May 2, 2018, three checks totaling about $140,688.73, from claims administrators Garden City Group, Strategic Claims, and A.B. Data Ltd, on account of claims made on the DYP-2 Litigation Settlement Fund, Energy Recovery, Inc Securities Litigation, and NII Holdings Inc Securities Litigation, purportedly on behalf of Gibraltar Nimello, were deposited into Alpha Plus's PNC account ending in numbers 6602.

b.     On or about May 10, 2018, nine checks totaling about $208,560.72, from claims administrator Strategic Claims, on account of claims made on the CBD Energy Ltd Lit SF and Kalobois Settlement Fund, purportedly on behalf of Bahamas Quartis, were deposited into Alpha Plus's PNC account ending in numbers 6602.

c.     On or about May 21, 2018, 13 checks totaling about $94,561.95, from claims administrator RG2, on account of claims made on the Zaghain v THQ, et al Settlement Fund, purportedly on behalf of Gibraltar Nimello, were deposited into Alpha Plus's PNC account ending in numbers 6602.

d.     On or about June 7, 2018, 11 checks totaling about $343,868.90, from claims administrators Strategic Claims and KCC Class Action Service, on account of

18

claims made on the Tile Shop Securities Litigation Settlement, China Mobile Games & Entertainment Group LTD Securities Litigation Qualified Settlement Fund, and Ampio Pharmaceuticals Inc Litigation Settlement Fund, purportedly on behalf of Gibraltar Nimello, were deposited into Alpha Plus's PNC account ending in numbers 6602.

        e.      On or about June 7, 2018, 11 checks totaling about $38,556.57, from claims administrators Heffler and Strategic Claims, on account of claims made on the OmniVision Securities Litigation, purportedly on behalf of Gibraltar Nimello, were deposited into Alpha Plus's PNC account ending in numbers 6602.

        f.      On or about June 7, 2018, 5 checks totaling about $30,808.96, from claims administrator Heffler, on account of claims made on the OmniVision Securities Litigation, purportedly on behalf of Bahamas Quartis, were deposited into Alpha Plus's PNC account ending in numbers 6602.

        g.      On or about June 7, 2018, 1 check in the amount of about $8,077.08, from claims administrator Strategic Claims, on account of claims made on the Cadiz, Inc. Securities Litigation QSF, purportedly on behalf of Bahamas Quartis, was deposited into Alpha Plus's PNC account ending in numbers 6602.

        h.      On or about June 28, 2018, six checks totaling about $53,772.20, from claims administrators Garden City Group, Strategic Claims, and A.B. Data Ltd, on account of claims made on the St. Jude Securities Litigation Fund, STAAR Surgical Securities Litigation Fund, and Textura Corporation Securities Litigation Qualified Settlement Fund, purportedly on behalf of Gibraltar Nimello, was deposited into Alpha Plus's PNC account ending in numbers 6602.

      All in violation of Title 18, United States Code, Section 1956(h).

19

## COUNTS SEVEN THROUGH TEN
### (Money Laundering, Section 1956)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.  Paragraphs 1 through 22 and 24 through 35 of Count One are incorporated here.

2.  Paragraphs 2 and 5 through 20 of Count Six are incorporated here.

3.  On or about the dates set forth below, in the Eastern District of Pennsylvania, and elsewhere, defendants

### JOSEPH CAMMARATA,
### ERIK COHEN, and
### DAVID PUNTURIERI

knowingly conducted, and attempted to conduct, and aided, abetted, and willfully caused, the following financial transactions, specifically deposits of funds from Alpha Plus escrow accounts into accounts in the names of NJ Quartis and NJ Nimello of funds that had been paid on claims submitted by Alpha Plus purportedly on behalf of Bahamas Quartis and Gibraltar Nimello, each transaction constituting a separate count:

| COUNT | DATE | DESCRIPTION |
|-------|------|-------------|
| 7 | January 16, 2018 | Alpha Plus TD Bank escrow check number 10366 in the amount $41,357.82 deposited into NJ Quartis Investors bank account ending in 5993. |
| 8 | July 20, 2018 | Alpha Plus TD Bank escrow check number 10411 in the amount $14,443.09 deposited into NJ Nimello PNC bank account ending in 6658. |
| 9 | January 15, 2019 | Alpha Plus TD Bank escrow check number 10464 in the amount $36,064 deposited into NJ Quartis Investors bank account ending in 5993. |

| COUNT | DATE | DESCRIPTION |
|-------|------|-------------|
| 10 | September 16, 2019 | Alpha Plus TD Bank escrow check number 10520 in the amount $19,738.28 deposited into NJ Nimello PNC bank account ending in 6658. |

4.      When conducting, aiding, abetting, and willfully causing, the financial transactions described in paragraph 3 above, defendants JOSEPH CAMMARATA, ERIK COHEN, and DAVID PUNTURIERI knew that the property involved in those financial transactions represented the proceeds of some form of unlawful activity.

5.      The financial transactions described in paragraph 3 above involved the proceeds of a specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, and defendants JOSEPH CAMMARATA, ERIK COHEN, and DAVID PUNTURIERI acted with the knowledge that the transactions were designed, in whole and in part, to conceal and disguise the nature, location, source, ownership and control of the proceeds of the specified unlawful activity.

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

## COUNTS 11 THROUGH 12
### (Money Laundering, Section 1957)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.       Paragraphs 1 through 22 and 24 through 35 of Count One are incorporated here.

2.       Paragraphs 2 and 5 through 20 of Count Six are incorporated here.

3.       On or about the dates set forth below, in the Eastern District of Pennsylvania, and elsewhere, defendant

### JOSEPH CAMMARATA

knowingly engaged in, and attempted to engage in, and aided, abetted, and willfully caused, a monetary transaction affecting interstate commerce in criminally derived property of a value greater than $10,000, described more fully below, and such property was derived from a specified unlawful activity, that is wire fraud, in violation of Title 18, United States Code, Section 1343:

| COUNT | DATE | DESCRIPTION |
|-------|------|-------------|
| 11 | May 17, 2018 | Check No. 2276 in amount of $101,303.15, written on ALPHA Plus's TD bank account ending in - 6602 is deposited into defendant CAMMARATA's Merrill account in the name of PB Trade. |
| 12 | December 21, 2018 | Check No. 2307 in amount of $1,153,283, written on ALPHA Plus's TD bank account ending in - 6602, is deposited into defendant CAMMARATA's Merrill account in the name of PB Trade. |

All in violation of Title 18, United States Code, Sections 1957 and 2.

22

### NOTICE OF FORFEITURE #1

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.     As a result of the violations of Title 18, United States Code, Sections 1343 and 1349, set forth in this indictment, defendants

<strong>JOSEPH CAMMARATA,<br>ERIK COHEN, and<br>DAVID PUNTURIERI</strong>

shall forfeit to the United States of America any property, real or personal, that constitutes or is derived from proceeds traceable to the commission of such violations, including, but not limited to the sum of $40,000,000:

      2.     If any of the property subject to forfeiture, as a result of any act or omission of the defendants:

     a.  cannot be located upon the exercise of due diligence;

     b.  has been transferred or sold to, or deposited with, a third party;

     c.  has been placed beyond the jurisdiction of the Court;

     d.  has been substantially diminished in value; or

     e.  has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the property subject to forfeiture.

      All pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C).

23

## NOTICE OF FORFEITURE #2

**THE GRAND JURY FURTHER CHARGES THAT:**

1.     As a result of the violations of Title 18, United States Code, Sections 1956 and 1957 set forth in this indictment, defendants

**JOSEPH CAMMARATA,**
**ERIK COHEN, and**
**DAVID PUNTURIERI**

shall forfeit to the United States of America any property, real or personal, involved in such offenses, and any property traceable to such property, including, but not limited to the sum of $40 million.

2.     If any of the property described above, as a result of any act or omission of the defendants:

    a.   cannot be located upon the exercise of due diligence;

    b.   has been transferred to, sold to, or deposited with a third party;

    c.   has been placed beyond the jurisdiction of this Court;

    d.   has been substantially diminished in value; or

    e.   has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the property subject to forfeiture.

24

All pursuant to Title 18, United States Code, Section 982(a)(1).

**A TRUE BILL:**

**GRAND JURY FOREPERSON**

**JACQUELINE C. ROMERO**
**UNITED STATES ATTORNEY**