## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| | : | **CRIMINAL ACTION** |
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| | : | |
| **v.** | : | **No.   21-00427-01** |
| | : | |
| **JOSEPH CAMMARATA** | : | |
| | : | |
| *Defendant.* | : | |

**Kenney, J.**                                                    **September 15, 2022**

### MEMORANDUM

Defendant Joseph Cammarata is incarcerated pre-trial due to his own actions.

On March 10, 2022, this Court revoked Mr. Cammarata's bail because it found that there was probable cause to conclude that, while out on pre-trial release, Mr. Cammarata committed a federal crime, that there was clear and convincing evidence that Mr. Cammarata violated his conditions of release, and that there was a preponderance of evidence that Mr. Cammarata was unlikely to abide by any condition or combination of conditions of release. *See* ECF No. 48.

On appeal, the United States Court of Appeals for the Third Circuit affirmed this Court's decision and upheld the Order revoking Mr. Cammarata's bail. ECF No. 52.

Presently before the Court is Defendant's Motion for Reconsideration, in which Mr. Cammarata asks the Court to reconsider its prior ruling on pretrial detention under 18 U.S.C. § 3142(f), or, alternatively, to order Mr. Cammarata's temporary release under 18 U.S.C. § 3142(i)

so that he can prepare for trial. *See* ECF No. 85. For the reasons that follow, this Court will DENY Defendant's Motion for Reconsideration in its entirety.

### I.    PROCEDURAL HISTORY

On October 28, 2021, Mr. Cammarata was indicted by a federal grand jury in the Eastern District of Pennsylvania on charges of conspiracy to commit mail and wire fraud related to an alleged scheme to defraud securities class action claims administrators out of more than $40 million. ECF No. 1.

On November 3,[1] 2021, upon return from Bogotá, Colombia, Mr. Cammarata was arrested at the Miami International Airport. *See* ECF No. 14. On November 4, 2021, Mr. Cammarata made an initial appearance in the Southern District of Florida, during which the government moved for pretrial detention on the grounds that Mr. Cammarata was a flight risk. *Id.* at 2, 15.

On November 17, 2021, a Magistrate Judge in the Southern District of Florida ordered that Mr. Cammarata be released on numerous conditions, which included surrendering all passports and travel documents and not traveling outside of the Eastern District of New York, the Southern District of New York, and the Eastern District of Pennsylvania. *Id.* at 25–26. Mr. Cammarata's conditions of release also explicitly prohibited him from committing any state, local, or federal offense during the pendency of his case. *Id.* at 25.

---

[1] The Court notes that the executed arrest warrant identifies the date of Mr. Cammarata's arrest as November 4, 2021. ECF No. 27. A review of the record, however, reveals that most other documentation, including briefing from both the government and Defendant, identify the arrest date as November 3, 2021. *See* ECF Nos. 14, 27, 85, 97. Accordingly, herein, the Court will use November 3, 2021 as the arrest date to be consistent with both parties and the majority of the record.

Subsequently, after learning that on February 9, 2022, Mr. Cammarata had purchased a one-way ticket from John F. Kennedy International Airport in New York to Bogotá, Colombia with a February 22, 2022 departure date, the government moved *ex parte* for revocation of Mr. Cammarata's bail and for the issuance of an arrest warrant. ECF No. 30; ECF No. 35 Tr. 5:9–16. On February 21, 2022, Magistrate Judge Reid in the Eastern District of Pennsylvania issued an arrest warrant for Mr. Cammarata. *Id.* On February 22, 2022 Mr. Cammarata was placed under surveillance but investigators did not observe him travel to the airport or attempt to board the flight. ECF No. 35 Tr. 5:9–16.

On February 23, 2022, after the government informed Mr. Cammarata, through counsel, that an arrest warrant had been issued for him, Mr. Cammarata turned himself in. ECF No. 35 Tr. 5:9–16. On that same day, a hearing was held before Magistrate Judge Reid, during which he ordered that Mr. Cammarata continue to be released pending a revocation hearing before this Court (which was set for March 10, 2022, *see* ECF No. 31). ECF No. 32. Magistrate Judge Reid imposed additional conditions on Mr. Cammarata's release, including prohibiting Mr. Cammarata from being present at any international port of entry or exit. ECF No. 32. At the February 23, 2022 hearing before Magistrate Judge Reid, Mr. Cammarata admitted that he had booked the flight to Colombia but maintained that it was an innocent mistake and that he had intended to book the flight for his girlfriend. *See* ECF No. 35 Tr. 5:18–25. In response, the government posited that Mr. Cammarata's girlfriend was a foreign national and that if the flight reservation really had been intended for her, it indicated that Mr. Cammarata had separately violated his bail conditions by facilitating his girlfriend's unlawful entry into the United States. *See* ECF No. 35 Tr. 6:13–7:23.

On February 28, 2022, Dennis E. Boyle entered his appearance as a new defense attorney for Mr. Cammarata. ECF No. 34. On March 2, 2022, Mr. Cammarata's former defense attorneys, Mr. Antonio M. Pozos and Ms. Victoria L. Andrews, filed Motions to Withdraw, which were granted by the Court that same day. ECF Nos. 37, 38, 39.

Prior to the March 10, 2022 Bail Revocation Hearing, Mr. Cammarata, through his then-attorney, Mr. Boyle, filed a Response to the government's Motion for Revocation. ECF No. 41. Mr. Cammarata's Response included a Declaration of Mr. Cammarata's girlfriend, Jessica Vanessa Carillo Beltrán, who is a Colombian national and who claimed to have entered the United States illegally without Mr. Cammarata's knowledge. *See* ECF No. 41 Ex. B.

On March 8, 2022, the government submitted a Reply, as well as a Declaration of the assigned FBI agent E. Edward Conway (the "Conway Declaration"). ECF No. 43; *see also* ECF No. 43 Ex. 1. The Conway Declaration provided information relevant to the government's Motion for Bail Revocation, including:

> (i) Cammarata's access to off-shore wealth and his ability to flee; (ii) Cammarata's professions of intent to flee and his request that a co-conspirator provide him with information about countries without extradition treaties within the United States; (iii) Cammarata's failure to turn in his passport as required by his bail order; (iv) the government's efforts to track Cammarata's passport after Cammarata's transit through U.S. Customs in Miami; (v) the government's discovery and investigation of the [D]efendant's booking of the one-way ticket to Bogotá that led to motion to revoke his bail; (vi) the series of additional, multiple, and overlapping tickets and travel reservations purchased in the name of Cammarata's girlfriend between February 20 and February 27, 2022; (vii) the fact that the girlfriend actually left the United States on a different ticket purchased less than four hours before her departure; (viii) evidence of Cammarata's multiple unsuccessful pre-indictment efforts to procure a visitor visa for his girlfriend by fraudulently claiming that she was an employee of one of his companies and, later, that she was a crew member of his yacht; (ix) evidence establishing two prior occasions in which Cammarata had brought his girlfriend into the United States without inspection by traveling through the Bahamas; and (x) the fact that

> Cammarata's girlfriend's post-indictment clandestine entry into the
> United States was also preceded by her travel to the Bahamas.

ECF No. 97 at 4–5; *see also* ECF No. 43 Ex. 1.

On March 7, 2022, upon consideration of the briefings submitted in advance of the March 10, 2022 Bail Revocation Hearing, the Court issued an Order directing the government to attempt to obtain more information regarding the location of Mr. Cammarata's passport. ECF No. 44. Specifically, the Court asked the government to request expedited document receipts as to any items belonging to Mr. Cammarata that were stored in a third-party storage facility, Communitel Baggage Services ("Communitel"), at the Miami International Airport at the time of Mr. Cammarata's arrest. *Id.* On March 9, 2022, the government filed a Status Report (ECF No. 45), which explained that on the day of Mr. Cammarata's arrest he was permitted to store his personal belongings at Communitel and that in order to do so, Mr. Cammarata had presented his passport as identification. ECF No. 45. The government further explained that Communitel records showed that Mr. Cammarata's father retrieved Mr. Cammarata's personal belongings from Communitel on November 15, 2021. ECF No. 45 After serving Communitel with a subpoena on March 8, 2022, the government received additional information from Communitel including:

> 1) a photograph of [Mr. Cammarata] when he left the bag at the storage room;
> 2) a photograph of [Mr. Cammarata's] passport (thereby establishing that Cammarata possessed that travel document at that time); 3) the order number information in Communitel 'system; and 4) a screenshot of detailed checkout information as well as the receipt for the baggage storage room.

ECF No. 45. On March 9, 2022, Mr. Cammarata filed a Response to the government's Status Report. ECF No. 46.

On March 10, 2022, this Court held a Bail Revocation Hearing, and after consideration of the evidence and argument presented, revoked Mr. Cammarata's bail because it found that there

was probable cause to conclude that, while out on pre-trial release, Mr. Cammarata committed a federal crime by facilitating his girlfriend's unlawful entry into the United States, that there was clear and convincing evidence that Mr. Cammarata had been in possession of his passport in direct violation of his conditions of release, and that there was a preponderance of evidence that Mr. Cammarata was unlikely to abide by any condition or combination of conditions of release due to the fact that he was a significant flight risk who had demonstrated a serious lack of respect for the laws of the United States. *See* ECF No. 48.

On March 16, 2022, Mr. Cammarata appealed this Court's Order (ECF No. 48) revoking his bail to the United States Court of Appeals for the Third Circuit, and on April 5, 2022, the Third Circuit affirmed this Court's decision and upheld the Order revoking Mr. Cammarata's bail. ECF No. 52.

On June 10, 2022, Mr. Cammarata's then-defense attorney, Mr. Boyle, filed a Motion to Withdraw. ECF No. 57.

On July 3, 2022, the Court received a letter from Mr. Cammarata that it construed as three *pro se* Motions requesting to proceed *pro se*, to meet with the Court *in camera*, and to reconsider his bail revocation. *See* ECF Nos. 66–68. In this letter, Mr. Cammarata raised concerns about his access to discovery while incarcerated. *See id.*

On July 15, 2022, a Motion Hearing was held to address Mr. Boyle's Motion to Withdraw, as well as to address the pending *pro se* Motions. *See* ECF No. 81. At the July 15, 2022 Motion Hearing, the Court heard testimony from Alisha Gallagher, Senior Consolidated Legal Center Attorney at FDC Philadelphia for the Bureau of Prisons regarding Mr. Cammarata's access to discovery. *See* ECF No. 85-1 at 14–20 (providing a summary of Ms. Gallagher's testimony). Also at the Motion Hearing, the Court heard from Attorney Mariana

Rossman who represented that once the necessary funds were secured, she would be entering an appearance and representing Mr. Cammarata alongside pro hac vice counsel Cohen Williams, LLP. After the Motion Hearing, the Court granted Mr. Boyle's Motion to Withdraw. ECF No. 82. Additionally, Mr. Cammarata's new counsel, Mariana Rossman, entered an appearance.[2] *See* ECF No. 80.

On July 22, 2022, Mr. Cammarata submitted a Motion for Reconsideration asking this Court to reconsider its prior decision to revoke Mr. Cammarata's bail. ECF Nos. 85. In that Motion, Mr. Cammarata's defense counsel specifically requested the opportunity to cross-examine the case agent and four arresting agents as to the passport issue. ECF No. 85-1 at 9–10.

On August 1, 2022, the Court granted Motions for Pro Hac Vice Admission for the following defense attorneys from Cohen Williams, LLP:  Reuven L. Cohen, Brittany L. Lane, Youngbin Son, and Michael V. Schafler. ECF No. 91.

Also on August 1, 2022, the Court issued an Order requiring the government to file a response to Defendant's Motion for Reconsideration, and, in light of defense counsel's request, to provide information about the availability of the case agent and four arresting agents to testify at a hearing on the Motion for Reconsideration. ECF No. 92.

On August 5, 2022, consistent with the Court's Order (ECF No. 92), the government filed a Response in Opposition to Defendant's Motion for Reconsideration, in which it provided information as to the availability of the arresting agents to testify. *See* ECF No. 97 at 11 n.3.

---

[2] To enable Mr. Cammarata to secure the counsel of his choosing, this Court approved the release of $2,000,000 of Mr. Cammarata's assets that had been frozen in connection to the related civil matter, specifically authorizing $1,500,000 to be used for legal fees and $500,000 to be used for costs and expenses incurred in connection with representing Mr. Cammarata. *See Securities and Exchange Commission v. Joseph Cammarata,* 21-cv-04845-CFK at Dkt. No. 121.

On August 10, 2022, Defendant filed a Reply to the government's Response. ECF No. 98.

On August 31, 2022 a Motion Hearing on the Defendant's Motion for Reconsideration was scheduled for September 1, 2022, which took into account the availability of the arresting agents to ensure that they would be available to testify should defense counsel call them as witnesses. ECF No. 99.

Prior to the September 1, 2022 Motion Hearing on the Motion for Reconsideration, the Court noticed the parties that it would not be ruling from the bench at the Motion Hearing, and would instead, be taking the Motion for Reconsideration under advisement. ECF No. 101. The Court also ordered supplemental briefing on the matter to be filed on or before September 8, 2022. *Id.*

On September 1, 2022, the Court held a Motion Hearing on the Defendant's Motion for Reconsideration. *See* ECF No. 104 Tr. During the Motion Hearing, despite the Court's accommodation of defense counsel's request that the case agent and four arresting agents be available to testify, defense counsel did not call any of these individuals as witnesses. *See* ECF No. 104. However, the government did call arresting agent Special Agent Lanthorn, who was then cross-examined by defense counsel. *See* ECF No. 104 Tr. 36:25–37:1.

On September 8, 2022, Defendant and the government both submitted supplemental briefing. ECF Nos. 106, 107.

II. **DISCUSSION**

A. **Reconsideration Under 18 U.S.C. § 3142(f)(2) is Not Warranted.**

Presently, Defendant Cammarata moves for reconsideration of this Court's prior Bail Revocation Order (ECF No. 48) pursuant to 18 U.S.C. § 3142(f)(2). *See* ECF No. 85.

8

Pursuant to the Bail Reform Act,

> [a bail] hearing may be reopened, before, or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

18 U.S.C. § 3142(f)(2).

Here, Mr. Cammarata argues that reconsideration is warranted under 18 U.S.C. § 3142(f)(2) because there is "new" evidence that "he does not have and has not had (since the day of his arrest) his passport" and that the alleged violation of law (alien smuggling pursuant to 8 U.S.C. § 1324(a)(1)) is "insufficient to deprive Mr. Cammarata[] [of his] release and is unconstitutionally punitive." ECF No. 85 at 1–2.

For the reasons that follow, however, this Court finds that Mr. Cammarata has failed to present any new evidence that has a material bearing on the issue of whether there are conditions of release that will reasonably assure his appearance, as required. To the contrary, the Court is less assured now than at the time of the March 10, 2022 Bail Revocation Hearing that Mr. Cammarata would appear for future proceedings or comply with any set of conditions should he be released. Thus, reconsideration of this Court's prior Bail Revocation Order (ECF No. 48) is not warranted pursuant to 18 U.S.C. § 3142(f)(2).

At the Bail Revocation Hearing held before this Court on March 10, 2022, the Court granted the government's Motion to Revoke Bail after it determined that there was clear and convincing evidence that Mr. Cammarata violated his conditions of release by retaining possession of his passport and that there was probable cause to believe Mr. Cammarata committed a federal crime while on pre-trial release. ECF No. 48. The Court also scrutinized the 18 U.S.C. 3142(g) factors and found that there was a preponderance of evidence that Mr.

Cammarata was unlikely to abide by any condition or combination of conditions of release, and therefore that no combination of conditions would reasonably assure Mr. Cammarata's future appearance, as required.[3] ECF No. 48.

First, with respect to the passport issue, Defendant Cammarata submitted the following "new" evidence: (1) a declaration of Mr. Cammarata (the "Cammarata Declaration") providing that he has not seen nor possessed his passport since the day of his arrest and describing his account of the day he was arrested (*see* ECF No. 85 Ex. E);[4] (2) a declaration of former FBI Special Agent Paul Bonin (the "Bonin Declaration") providing that, in his view, the FBI's failure to seize, inventory, and/or maintain chain of custody over Mr. Cammarata's passport at the time of the arrest fell below a reasonable standard of care for FBI Special Agents (*see* ECF No. 85 Ex. C); and (3) documentation that Mr. Cammarata canceled his passport on March 8, 2022 through

---

[3] When considering whether a criminal defendant's pretrial detainment is necessary, a judge must consider multiple factors in light of the ultimate goal of assuring "the appearance of the [defendant at trial]. . . and the safety of any other person and the community." 18 U.S.C. § 3142(g). The factors court's must consider are: "(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591 [18 USCS § 1591], a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including—(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(1)-(4).

[4] Although the Court ultimately finds the Cammarata Declaration lacks credibility for other reasons discussed infra, the Court notes that although Defense counsel represents that the Cammarata Declaration is a sworn statements signed under penalty of perjury, the Court finds, upon review of Exhibit E that it contains no signature. *See Infra* at 9 n.4; *see also* ECF No. 85 Ex. E at 33.

the submission of a DS 64 form to the United States Department of State (*see* ECF No. 85 Ex.

B).[5] ECF No. 85-1 at 2–3.

Additionally, at the Motion for Reconsideration Hearing on September 1, 2022, the

government called FBI Special Agent Matthew C. Lanthorn, who testified that the FBI did not

seize Mr. Cammarata's passport at the time of the arrest; the government also submitted several

audio recordings of telephone conversations Mr. Cammarata had with his girlfriend and family

members while incarcerated, as well as a text message from Mr. Cammarata's phone (dated June

25, 2022) in which Mr. Cammarata appeared to admit that he had the ability to evade border

protection between Florida and the Bahamas. *See* ECF No. 41 Tr. 47:16–49:2, 50:2–19, 67:25–

69:3; *see also* Gov. Ex. 1, June 25, 2022 Text Message.

Upon consideration of the evidence and arguments submitted by counsel, this Court finds

no reason to reconsider its prior findings with respect to the passport.[6]  In any case, even if the

---

[5] Defense counsel also provides that there is "new" evidence regarding Mr. Cammarata's inability to prepare for trial and participate in his own defense. This argument is addressed in relation to the Court's discussion of temporary release pursuant to18 U.S.C. § 3142(i) below.

[6] Mr. Cammarata's Declaration and the testimony of Special Agent Lanthorn provide conflicting accounts of what transpired during Mr. Cammarata's arrest with respect to Mr. Cammarata's passport. *Compare* ECF No. 104 Tr. 37–44 *with* ECF No. 85 Ex. E. Mr. Cammarata contends that that the arresting agents seized his passport during the arrest, while Special Agent Lanthorn testified that Mr. Cammarata retained control of his passport and checked all of his personal belongings that were in his control into the third-party storage facility, Communitel, at the Miami International Airport. Upon consideration of this conflict, the Court finds the testimony of Special Agent Lanthorn credible and credits it over the Declaration of Mr. Cammarata, as it is consistent with other evidence in the record that served as the basis for this Court's prior determination regarding the passport. *See generally* ECF No. 49 Tr. Further, the Court finds that the additional "new" evidence submitted by Mr. Cammarata, specifically the Declaration of FBI Special Agent Paul Bonin and the fact that Mr. Cammarata canceled his passport on March 8, 2022, is largely irrelevant to its inquiry as to whether Mr. Cammarata retained his passport in violation of his conditions of release. The Court credits Special Agent Lanthorn's testimony that during the arrest Cammarata retained possession of his passport and that Mr. Cammarata stored all his personal possessions in his control at that time at the third-party storage facility at the Miami airport. It is undisputed that Mr. Cammarata later regained custody of the items he stored

"new" evidence caused the Court to reconsider its prior finding that there was clear and convincing evidence to conclude Mr. Cammarata retained his passport in violation of the conditions of pre-trial release, the Court finds that such a determination would not have a material bearing on the issue of "whether there are conditions of release that will reasonably assure the appearance" of Mr. Cammarata "as required" because Mr. Cammarata has failed to submit any new evidence to challenge the Court's prior finding that there is probable cause Mr. Cammarata committed a felony while on pre-trial release or to rebut the accompanying presumption that no condition or combination of conditions would assure his presence at future proceedings. 18 U.S.C. § 3148(b)(2) (once a court has determined that there is probable cause to believe that a person has committed a felony while on pre-trial release, "a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community").

    Rather than attempting to challenge the Court's finding that there is probable cause to conclude he committed a felony by smuggling his girlfriend into the United States in violation of

---

at the Miami airport. The fact that Special Agent Lanthorn did not take possession of the passport or document its existence on any inventory does not change the fact that the evidence clearly indicates Mr. Cammarata was in possession of his passport when he checked his bag into the storage facility at the airport or the obvious inference that he placed the passport into that bag, as it was not seized by the FBI. Likewise, it does not change any of the other facts that led this Court to conclude clear and convincing evidence existed that Mr. Cammarata retained his passport in violation of the conditions of his release, including his decision to book a one-way international flight while on pre-trial release. Additionally, the Court finds that the fact that Mr. Cammarata canceled his passport on March 8, 2022 is not probative as to whether or not Mr. Cammarata retained his passport in violation of his conditions of release prior to then. Accordingly, this Court finds no reason to reconsider its conclusion, which was previously upheld by the Third Circuit on appeal, that there existed clear and convincing evidence that Mr. Cammarata retained his passport in violation of his conditions of release.

8 U.S.C. § 1324(a)(1) with new evidence,[7] Mr. Cammarata, through counsel, largely attempts to downplay its significance. For example, Mr. Cammarata, through counsel, argues, that, "while all violations of federal statutes are serious, there are different ways to violate [8 U.S.C. 1324(a)(1)]." ECF No. 85-1 at 26. In his view, there are "[o]n the one hand, [circumstances in which] a defendant can smuggle 46 persons across the border…leading to catastrophic consequences" whereas, "[a]t the other end of the spectrum of 'criminality,' a lonely, anxious, and confused first-time offender can violate the statute by meeting his girlfriend for a short period before sending her home." *See also id.* at 25–26 ("Mr. Cammarata…acknowledges, as he must, that it was more than asinine to allow his girlfriend to stay with him. People in love often do stupid things for love, but when people in love are on pretrial supervision, they have no margin for error for stupid things."). In short, Mr. Cammarata contends that his girlfriend's illegal entry to the United States "only became relevant as part of Mr. Cammarata's explanation for his purchase of a commercial airplane ticket to Colombia," and that, while "technically a violation" of federal law it has no bearing on his flight risk. *See* ECF No. 85-1 at 25–26; *see also id.* at 3 ("this is not a smuggling or even an immigration case, and the issue of Mr. Cammarata's role in her entry is the tail wagging the dog").

This Court finds that Mr. Cammarata's argument is unconvincing and at odds with the law, as once a court has determined that there is probable cause to believe that a person has committed a felony while on pre-trial release, "a rebuttable presumption arises that no condition

---

[7] Mr. Cammarata also argues that "[t]he government has no direct evidence that Mr. Cammarata helped Ms. Beltran get into the United States in January 2022 in violation of the conditions of his release." ECF No. 106 at 15. However, the Court already found that there was probable cause to determine Mr. Cammarata committed a violation of federal law while on pre-trial release and this ruling was upheld by the Third Circuit. *See* ECF No. 52. Thus, challenges to the sufficiency of evidence underlying that ruling, without proffering any relevant and material "new" evidence are largely irrelevant to this Court's present inquiry.

or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community." 18 U.S.C. § 3148(b)(2). Here, the Court finds that this presumption is made even stronger by the reality that the facts underlying the alleged violation of law relate directly to Mr. Cammarata's knowledge and ability to evade border control and to move a person in and out of the United States by boat, illegally and undetected, which in turn speak directly to this Court's determination of whether it can reasonably be assured Mr. Cammarata will continue to appear as required for future proceedings. Mr. Cammarata has failed to submit any new evidence that overcomes this presumption or that has any material bearing on this Court's prior finding at the March 10, 2022 Bail Revocation Hearing, that there was a preponderance of evidence that Mr. Cammarata was unlikely to abide by any condition or combination of conditions of release and that he posed a significant flight risk. *See* ECF No. 48; *see also* ECF No. 49 Tr. 33:15–19. While it may be true that Mr. Cammarata has canceled his passport, it is also true that Mr. Cammarata still has access to seafaring boats, private planes, and offshore assets, that Mr. Cammarata owns an island in the Bahamas and an apartment in Colombia, and that Mr. Cammarata knows how to effectively use these means to evade border control (as demonstrated by the government's evidence that Mr. Cammarata has, on multiple occasions, assisted his girlfriend in evading border patrol and entering the United States illegally via boat from the Bahamas to Florida).[8]

_____

[8] Although the Court did not consider it in the present decision, the Court notes that prior to the issuance of this Memorandum and the accompanying Order the government filed an Emergency Motion to Reopen the Hearing on Defendant Cammarata's Motion for Reconsideration, in which it explained that the government is ready to submit two additional pieces of evidence that "conclusively establish[] that Cammarata broke the law by smuggling his girlfriend into the United States while on bail." *See* ECF No. 112 at 2; *see also infra* at 20 n.10 (providing further discussion of the government's Emergency Motion). Specifically, the government provides that it is ready to produce evidence that "[i]n a recorded jail telephone call to his girlfriend, dated June 27, 2022, [Mr. Cammarata] stated that he was in jail because he wanted to see her and

Moreover, although not material to its findings here, the Court notes that the telephone call recordings submitted by the government at the September 1, 2022 Motion Hearing on the Defendant's Motion for Reconsideration further support its finding that Mr. Cammarata is a legitimate flight risk with a serious lack of respect for the laws of the United States, as well as introduces for the first-time evidence that Mr. Cammarata may pose a danger to others should he be released. For instance, in one of these phone calls, after verbally confirming that he had knowledge he was speaking on a recorded line, Mr. Cammarata spoke with jarring detail about the infliction of harm he wished upon Assistant United States Attorney David J. Ignall (as well as Mr. Ignall's mother). *See* ECF No. 104 Tr. 48:2–25. Additionally, in another one of the recorded phone calls, Mr. Cammarata told his girlfriend, Ms. Beltran, that "things are going good [sic] with the lawyers" that he "can't talk about it now, but he "might be in Bogotá sooner than later." As the government attorney Mr. Ignall pointed out at the September 1, 2022 Motion Hearing, "[o]one interpretation [of this statement] is that [Mr. Cammarata is planning to flee to Colombia should he be released" and "[a]nother interpretation [is that Mr. Cammarata] is hoping that he'll be acquitted and then he can move to Colombia," however, "[i]n either circumstance, it's clear that [Mr. Cammarata] has a significant tie to Colombia…," as well as a sincere desire to get to Bogotá to be with his girlfriend as soon as possible. ECF No. 104 Tr. 50:20–25.

Thus, if anything, the new evidence brought before this Court at the September 1, 2022 Motion Hearing further supports this Court's prior conclusion that pre-trial detainment is necessary to reasonably assure Mr. Cammarata's future appearances.

---

admitted that 'I never should've brought you to the country,'" and also evidence that "[o]n September 14, 2022, investigating agents spoke to an individual who admitted that he transported the [Mr. Cammarata's] girlfriend, at [Mr. Cammarata's] direction, from the Bahamas by boat to the United States in June 2021 and again in January 2022 (while [Mr. Cammarata] was on pretrial release)." ECF No. 112 at 2.

**B.  Temporary Release Under 18 U.S.C. § 3142(i) is Not Warranted.**

Under 18 U.S.C. § 3142(i), the so-called "limited safety valve" provision, a Court is empowered to re-examine detention decisions "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." When arguing for temporary release under 18 U.S.C. § 3142(i), the defendant bears the burden of establishing circumstances that warrant such relief. *See United States v. Veras*, No. 3:19-CR-010, 2020 WL 1675975, at *3 (M.D. Pa. Apr. 6, 2020).

Temporary release under 18 U.S.C. § 3142(i) on the ground that such release is necessary for the preparation of the person's defense is an extremely rare form of relief, as evidenced by the scarcity of case law on the subject.[9] Despite the general dearth of caselaw on the issue, however, the Court finds that in the rare instances such motions are considered, other courts have analyzed the following factors: "(1) the time and opportunity the defendant had to prepare for the trial and participate in his defense, (2) the complexity of the case and volume of information, and (3) the expense and inconvenience associated with preparing while incarcerated." *United States v. Bothra*, No. 20-1364, 2020 WL 2611545, at *2 (6th Cir. May 21, 2020) (internal citations and quotations omitted). Further, courts have also found that "[t]emporary release is not warranted when a defendant has had ample time to prepare his defense, even given the practical limitations on his access to telephones and the Attorney Conference Room." *Id.* (citing *United States v. Persico*, No. S 84 CR 809 (JFK), 1986 WL 3793, at *2 (S.D.N.Y. Mar. 27, 1986)). Additionally, another district court judge within the Third Circuit recently found that, "[t]emporary release is

---

[9] Although caselaw on the subject of temporary release under 18 U.S.C. § 3142(i) for a "compelling reason" has expanded in the wake of the COVID-19 pandemic, the Third Circuit has not articulated a specific standard for analyzing motions under 18 U.S.C. § 3142(i) that are based on the grounds that temporary release is necessary for the preparation of a defendant's trial.

not warranted just because it would be helpful, preferable, or even ideal for a defendant's trial preparations" because "[i]f federal courts had to order temporary release just because it would aid a defendant's ability to work with counsel, the exception in section 3142(i) would swallow all detention orders." *United States v. Coggins*, No. 1:20-CR-00033, 2020 WL 2217259, at *6 (M.D. Pa. May 7, 2020) (internal citations and quotations omitted). Thus, "[a]t a minimum, detained defendants seeking temporary release under section 3142(i) for 'necessary' trial preparations must show why less drastic measures—such as requests to continue the trial date (consistent with the Speedy Trial Act) or alternative means of communication (including in writing or by available remote conferences)—would be inadequate for their specific defense needs." *Id.* (internal citations and quotations omitted).

Here, Mr. Cammarata argues that his pre-trial incarceration inhibits his ability to meaningfully assist in his defense. *See generally* ECF No. 85-1 § II.B. More specifically, Mr. Cammarata primarily argues that he does not have the ability to independently review discovery due to his limited access to computers while incarcerated, and that the computers he would have access to have limited capabilities and would not permit a full review of discovery. *Id.* Mr. Cammarata also argues that his incarceration limits his ability to have in-person or virtual meetings with his attorneys to review discovery together, as well as his ability to participate in his defense by locating witnesses, reviewing his own records, or conducting independent internet research. *Id.*

There is no question that this is a complex case, as it is designated as such, or that it involves a significant amount of discovery; and there is likewise no dispute that temporary release would make preparing for trial more efficient and surely more convenient; however, here, the Court finds that Mr. Cammarata has competent attorneys, of his choosing, who are

effectively managing the added hurdles to trial preparation that necessarily arise when a defendant is detained pre-trial.

At the September 1, 2022 Motion Hearing, Mr. Cammarata's attorney, Ms. Mariana Rossman represented that she has been able to "go to the FTC twice a week with [her] computer in hand…and [] share discovery with Mr. Cammarata." ECF No. 104 Tr. 63:22–25; *see also* ECF No. 104 Tr. 64:13–65:15 (describing how defense counsel has been able to review documents without Mr. Cammarata in order to narrow down specific ones to review with Mr. Cammarata during their meetings). Of course, as defense counsel has repeatedly pointed out, reviewing documents with Mr. Cammarata is more burdensome than it would be if Mr. Cammarata were released and there are circumstances that sometimes impact the ability for counsel to meet with Mr. Cammarata as planned, however, the Court finds that "there is nothing unique about [Mr. Cammarata's] situation—as opposed to all detained defendants who must assist in their defense within the limits of pretrial custody—that would make temporary release for trial preparations 'necessary' here." *Coggins*, 2020 WL 2217259, at *6 (internal quotations and citations omitted); *id.* ("[t]emporary release is not warranted just because it would be helpful, preferable, or even ideal for a defendant's trial preparations") (internal quotations and citations omitted); *see also e.g., United States v. Petters*, No. CR. 08-364(RHK/AJB), 2009 WL 205188, at *2 (D. Minn. Jan. 28, 2009) ("While this case may, in fact, be complicated and require Defendant to review hundreds if not thousands of documents and meet with his lawyers for dozens of hours, that fact, standing alone, simply does not justify Defendant's release...Indeed, accepting such an argument would mean that the more complicated the crime, the more likely a defendant should be released prior to trial. This is clearly an absurd result."); *United States v. Birbragher,* No. 07–CR–1023, 2008 WL 2246913, at *1 (N.D. Iowa May 29, 2008) (denying request for release under Section

3142(i) despite defendant's contention that he could not adequately prepare for trial in an "extremely complicated and document-intensive case").

Moreover, the Court finds that many of Mr. Cammarata's complaints about access to discovery are premature and speculative, and that Mr. Cammarata has failed to show why less drastic measures… would be inadequate for [his] specific defense needs." *Coggins*, 2020 WL 2217259, at *6 (internal citations and quotations omitted). For instance, Mr. Cammarata complains that he does not have independent access to review electronic discovery while incarcerated, but the record shows his current counsel has not diligently attempted to provide electronic discovery to the detention center to figure out to what extent Mr. Cammarata would be able to review electronic discovery independently while incarcerated. *See* ECF No. 66:25–67:4. The government has also offered less drastic solutions to the asserted discovery issues, such as working with defense counsel to provide Mr. Cammarata a personal laptop, but defense counsel has resisted such efforts arguing that "[i]t is unclear how long it would take for the government to upload the discovery to this computer[….,] it is unclear whether all the discovery Mr. Cammarata's counsel would like to share with him would be accessible from this computer[…, and] it is unclear what the parameters around Mr. Cammarata's use of this computer would be." ECF No. 106 at 23–24; s*ee also* ECF No. 67:4 –9.

Accordingly, upon consideration of the evidence and arguments set forth by counsel regarding Mr. Cammarata's ability to prepare for trial, the Court finds that Mr. Cammarata has failed to demonstrate temporary release pursuant to 18 U.S.C. § 3142(i) is warranted.

III.     **CONCLUSION**

For the foregoing reasons, Mr. Cammarata's Motion for Reconsideration will be

DENIED.[10]


**BY THE COURT:**


**/s/** *Chad F. Kenney*


―――――――――――――――

**CHAD F. KENNEY, JUDGE**

---

[10] As previously discussed, (*see supra* at 14 n.8), prior to the issuance of this Memorandum and accompanying Order, the government filed an Emergency Motion to Reopen the Hearing on Defendant Cammarata's Motion for Reconsideration. *See* ECF No. 112. However, the Court made the determination to deny Mr. Cammarata's Motion for Reconsideration prior to its review of the government's Emergency Motion, and the Emergency Motion had no bearing on that decision. Presently, the Court will leave the Emergency Motion open, so that the parties may discuss the need for the Court to rule on the Emergency Motion in light of its decision to deny Mr. Cammarata's Motion for Reconsideration of Pretrial Detention (ECF No. 85).