## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | **:** | |
| | **:** | **CRIMINAL ACTION** |
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| | **:** | |
| | **:** | |
| **v.** | **:** | **No.    21-00427-01** |
| | **:** | |
| **JOSEPH CAMMARATA** | **:** | |
| | **:** | |
| *Defendant.* | **:** | |

### MEMORANDUM

On October 6, 2022, this Court issued an Order (ECF No. 137) denying a Motion for Bill of Particulars (ECF No. 132) brought by Defendant Joseph Cammarata. The Court's reasoning for that denial is set forth in greater detail herein.

In sum, the Court finds that Mr. Cammarata's request for more particularized information is without merit and contrary to Third Circuit precedent, as the Superseding Indictment sufficiently lays out the elements of the crimes charged and adequately apprises Mr. Cammarata of the allegations against him by setting forth specific and clear allegations that enable Mr. Cammarata to adequately prepare a defense, to avoid surprise at trial, and to avoid the later risk of double jeopardy. *See generally* ECF No. 108. Additionally, prior to the submission of Defendant Joseph Cammarata's Motion for Bill of Particulars, the government filed a detailed Pretrial Memorandum (ECF No. 124), which provided Defendant with additional detailed notice as to the government's case by providing a summary of the evidence the government intends to use at trial to prove its case and outlining various evidentiary issues the government foresees

may arise during trial. *See generally* ECF No. 124. Although the Court finds that the Superseding Indictment by itself is sufficient to warrant the denial of Defendant Joseph Cammarata's Motion for Bill of Particulars (ECF No. 132), the Court notes that the fact that Mr. Cammarata's defense counsel had access to the government's Pre-Trial Memorandum prior to submitting the Motion for Bill of Particulars further supports this Court's reasoning for denying such Motion.

## I.   BACKGROUND & RELEVANT PROCEDURAL HISTORY

On October 28, 2021, Defendant Joseph Cammarata, Defendant Erik Cohen and Defendant David Punturieri, were indicted by a grand jury in the Eastern District of Pennsylvania on a charge of conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 1349.

The Indictment alleged that the Mr. Cammarata and the two other co-defendants, "conspired and agreed together…to commit mail fraud and wire fraud, that is, to knowingly execute and attempt to execute a scheme to defraud claims administrators, investor-claimants, and securities class action defendants, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises." ECF No. 1.

More specifically, the Indictment alleged the co-conspirators created what were "purported" to be "independent entities," but which were, in actuality, entities "owned or controlled by the defendants," that were used to make false claims in securities class action settlements and SEC enforcement action settlements through the defendants' claims aggregator business, Alpha Plus, LLC ("Alpha Plus"). ECF No. 1 ¶ 24.

The Indictment also provided additional details about the manner and means of this alleged conspiracy. For example, the Indictment specifically identified, by name, the alleged sham entities, as well as several of the claims administrators to which the three defendants

allegedly submitted fraudulent claims on behalf of these entities. *See* ECF No. 1 ¶¶ 25, 27. The Indictment also specifically alleged that the defendants created "false names of supposed Alpha Plus employees when communicating with claims administrators," provided various fictitious documents to claims administrators to support their fraudulent claims, and "[i]impersonated individuals purportedly in control of Alpha Plus clients, such as T.C. and S.D., in communications with claims administrators who were attempting to determine the legitimacy of claims submitted by Alpha Plus." ECF No. 1 ¶¶ 28–32.

After laying out the manner and means of the alleged conspiracy, the Indictment concluded that the defendants received approximately $40,000,000 "from claims administrators based on false, fraudulent and materially misrepresented claims they made." ECF No. 1 ¶ 34.

On November 3, 2021,[1] Mr. Cammarata was arrested at the Miami International Airport, upon return from a trip out of the country. On December 28, 2021, Mr. Cammarata entered a plea of not guilty. *See* ECF No. 20.

At different points in the case proceedings, Mr. Cammarata has been represented by several different defense attorneys of his choosing. *See* ECF Nos. 16, 17, 34, 80, 88–91, 119. On July 15, 2022, July 29, 2022, and September 22, 2022, Mr. Cammarata's current counsel made their appearances. *See* ECF Nos. 80, 88 –91, 119.

On September 8, 2022, a grand jury issued a Superseding Indictment, which includes, in addition to the charge of conspiracy to commit mail and wire fraud set forth in the initial Indictment, four substantive wire fraud charges, a money laundering conspiracy charge, and six

---

[1] The Court notes that the executed arrest warrant identifies the date of Mr. Cammarata's arrest as November 4, 2021. ECF No. 27. A review of the record, however, reveals that most other documentation, including briefing from both the government and Defendant, identify the arrest date as November 3, 2021. *See* ECF Nos. 14, 27, 85, 97.

3

substantive money laundering charges. More specifically, the Superseding Indictment charges all three defendants with conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 1349 (Count I), wire fraud in violation of 18 U.S.C. § 1343 (Counts II–V), engaging in money laundering conspiracy in violation of 18 U.S.C. § 1956(h) (Count VI), and concealment money laundering in violation of 18 U.S.C. § 1956 (Counts VII–X), as well as Mr. Cammarata with two additional charges of money laundering in violation of 18 U.S.C. § 1957 (Counts XI–XII).

The Superseding Indictment lays out the manner and means through which these alleged crimes were carried out. With respect to Count I, the Superseding Indictment largely reiterates the manner and means laid out in the initial Indictment.

Specifically, with respect to Count I, the Superseding Indictment alleges the defendants controlled and operated Alpha Plus, a claims aggregator, and used Alpha Plus to submit claims on behalf of purported clients "who claimed entitlement to settlements from securities class action and SEC enforcement action settlements." ECF No. 108 ¶ 11.

The alleged sham entities are identified in the Superseding Indictment as NJ Nimello, NJ Quartis and Invergasa. ECF No. 108 ¶¶ 16, 19–20, 22.

With respect to NJ Nimello, the Superseding Indictment alleges that "[a]ccording to records submitted by Alpha Plus to various claims administrators, Nimello Holding LLC ('Gibraltar Nimello') was an Alpha Plus client…[and that] Alpha Plus submissions claimed that Gibraltar Nimello was a hedge fund located in Gibraltar," with a legal representative identified in the Superseding Indictment as "T.C." The Superseding Indictment further explains that in 2015 in New Jersey, Defendant David Punturieri incorporated an entity called Nimello Holding LLC ("NJ Nimello"), and that the incorporation documents list all three defendants as officers and directors of NJ Nimello. ECF No. 108 ¶ 17. Additionally, the Superseding Indictment alleges

4

that all three Defendants opened a bank account in the name of NJ Nimello at PNC Bank. ECF No. 108 ¶ 18.

With respect to NJ Quartis, the Superseding Indictment alleges that Alpha Plus submitted claims to claims administrators on behalf of "Quartis Trade and Investment LLC" ("Bahamas Quartis"), that Alpha Plus claimed was a hedge fund located in the Bahamas with a legal representative identified as S.D. ECF No. 108 ¶ 19. The Superseding Indictment further alleges that in 2014 in New Jersey, Defendant Erik Cohen incorporated an entity called Quartis Trade and Investment LLC ("NJ Quartis"), and that the incorporation documents show Defendants Cohen and Punturieri as members/managers of NJ Quartis and Defendant Cammarata as an owner in 2017. ECF No. 108 at 6 ¶ 20. The Superseding Indictment also provides that beginning in April 2015, all three Defendants opened bank accounts at PNC Bank, TD Bank, and Investors Bank in the name of NJ Quartis. ECF No. 108 at 6 ¶¶ 20–21.

With respect to Invergasa, the Superseding Indictment alleges that "[a]ccording to records submitted by Alpha Plus, Inversiones Invergasa SAS ("Invergasa") was an Alpha Plus client located in Bogota, Colombia." ECF No. 108 at 6 ¶ 22.

The Superseding Indictment also identifies specific claims administrators to which the Defendants allegedly submitted the fraudulent claims in the Eastern District of Pennsylvania (that is, Strategic Claims, Heffler and RG2), as well as alleging that the Defendants submitted additional fraudulent claims to other claims administrators throughout the country. ECF No. 108 at 7 ¶ 26.

The Superseding Indictment alleges that in connection with each of these sham entities, the three Defendants "caused Alpha Plus to submit claims on behalf of Gibraltar Nimello, Bahamas Quartis, and Invergasa SAS," and that these claims "falsely and fraudulently

represented" that these three entities "had purchased and sold securities that were the subject of class action lawsuits or SEC Enforcement actions." ECF No. 108 ¶ 27. According to the Superseding Indictment, the Defendants "[d]eposited the fraud proceeds received from claims administrators" in relation to those allegedly fraudulent claims submissions, "into bank accounts titled in the name of Alpha Plus, NJ Quartis, and NJ Nimello, and controlled by the Defendants at PNC, TD, and Investors banks." ECF No. 108 ¶ 27–29, ¶ 35.

Further, to effectuate this alleged fraud, the Superseding Indictment also alleges that the Defendants, "[u]sed false names of supposed Alpha Plus employees when communicating with claims administrators[,]" and that the Defendants impersonated "individuals purportedly in control of Alpha Plus clients, such as T.C. and S.D., in communications with claims administrators who were attempting to determine the legitimacy of claims submitted by Alpha Plus" and "individuals purportedly employed by brokerage firms in conversations with claims administrators." ECF No. 108 ¶¶ 28, 31–32. Additionally, the allegations in the Superseding Indictment claim that the Defendants, "[c]reated fictitious brokerage documents purporting to show purchases and sales of securities subject to class action and SEC enforcement action settlements" and "[f]alsely denied ownership or control of Alpha Plus in conversations with claims administrators who were attempting to determine the legitimacy of claims submitted by Alpha Plus." ECF No. 108 ¶¶ 29, 33.

On October 4, 2022, the Defendant filed a Motion for Bill of Particulars (ECF No. 132) asking the Court to order the government to file a bill of particulars identifying "(1) each of the claims the [g]overnment contends was fraudulent; (2) all alleged victims; and (3) each of the individuals whom the [g]overnment contends was impersonated, which of the Defendants

engaged in such impersonation, and which communications the [g]overnment contends were the subject of the alleged impersonations[.]" ECF No. 132 at 2.

On October 6, 2022, the government filed a Response in Opposition to Defendant's Motion for Bill of Particulars. ECF No. 135.

Also on October 6, 2022, the Court issued an Order (ECF No. 137) denying the Defendant's Motion for Bill of Particulars and explaining that an attendant Memorandum Opinion would follow to provide the Court's reasoning, which was grounded upon Third Circuit precedent. The present Memorandum Opinion provides that referenced reasoning.

## II.    **Legal Standard**

Whether or not to grant a motion for a bill of particulars is a "discretionary matter with the trial court." *United States v. Moyer*, 674 F.3d 192, 202 (3d Cir. 2012). Accordingly, "a district court's decision to deny a motion for a bill of particulars is "reviewed for abuse of discretion." *Id.* (citing *United States v. Addonizio*, 451 F.2d 49, 64 (3d Cir.1971)). An abuse of discretion occurs when "the deprivation of the information sought leads to the defendant's inability to adequately prepare his case, to avoid surprise at trial, or to avoid the later risk of double jeopardy." *Id.* (citing *United States v. Addonizio*, 451 F.2d 49, 64 (3d Cir.1971)).

"For an Indictment to be sufficient, it must contain all the elements of a crime and adequately apprise the defendant of what he must be prepared to meet." *Id.* at 203 (citing *Russell v. United States*, 369 U.S. 749, 763–766, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962)).

The Third Circuit has explained that the "purpose" of a bill of particulars is to "inform the defendant of the nature of the charges brought against him, to adequately prepare for his defense, to avoid surprise during the trial and to protect him against a second prosecution for an

inadequately describe[d] offense." *United State v. Urban,* 404 F.3d 754, 771–72 (3d Cir. 2005) (internal citations omitted).

Additionally, the need for a bill of particulars may be obviated when a defendant has had full access to discovery and the discovery provides defense the evidence upon which the government has constructed its case. *Urban,* 404 F.3d at 771–72 (internal citations omitted) (finding that "access through discovery to the documents and witness statements relied upon by the government in constructing its case…weaken[ed] the case for a bill of particulars"); *see also United State v. Giese*, 597 F.2d 1170, 1180 (9th Cir. 1979) ("Full discovery…obviates the need for a bill of particulars.")

**III.** **Discussion**

Here, Defendant Cammarata has asked for a bill of particulars to provide the following three categories of information: first, "each of the claims that the [g]overnment contends was fraudulent"; second "all alleged victims"; and third "each of the individuals whom the [g]overnment contends was impersonated, which of the Defendants engaged in such impersonation, and which communications the [g]overnment contends were the subject of the alleged impersonations…" ECF No. 132 at 2. The Defendant's arguments all relate to Count I, conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 1349. *See generally* ECF No. 132.

First, Defendant Cammarata argues, through counsel, that the Superseding Indictment does not identify "any of the purportedly fraudulent claims at issue, the dates on which they were supposedly submitted, to whom such claims were submitted, the nature of the allegedly false representation or forgeries at issue in such claims, or what the Defendants allegedly obtained thereby." ECF No. 132 at 5.

Although Defendant Cammarata is correct that the government has not identified each and every allegedly fraudulent submission underlying the conspiracy claim in the Superseding Indictment, this information is not necessary in the present case because the government is alleging that *every* claim submitted on behalf of Gibraltar Nimello, Bahamas Quartis, and Invergasa, was fraudulent. Therefore, this is not a case where, without a particularized accounting of each and every allegedly fraudulent transaction, a defendant would be forced to tediously weed through numerous transaction records in an attempt to identify which specific claims the government is alleging are fraudulent.

In support of his argument, Defendant Cammarata, through counsel, cites various out of circuit caselaw for the proposition that a bill of particulars identifying all allegedly fraudulent claims is required in fraud cases; however, not only are these cases non-binding upon this Court, but they are also each distinguishable, and, in some cases, even supportive of this Court's reasoning in the current matter.

First, the defense cites, *United States v. Alabed*, No. 119CR00089MHCJSA, 2019 WL 7842413 (N.D. Ga. Dec. 4, 2019), *report and recommendation adopted*, No. 1:19-CR-089-MHC-JSA, 2020 WL 114415 (N.D. Ga. Jan. 9, 2020), which found that defendants were entitled to a bill of particulars that provided "additional information" as to "allegedly fraudulent statements made in connection with the scheme to defraud." *Alabed*, 2019 WL 7842413 at *4. There, the Court reasoned that the relevant allegations were "general[] and conclusor[y]" and thus did not provide sufficient "particulars as to the allegedly fraudulent statements made by" the defendants in that case. *Id.* In the present case, however, the allegations are neither general nor conclusory; rather, the Superseding Indictment identifies three specific entities and alleges that *all* claims submitted by Alpha Plus on behalf of those entities were fraudulent. Accordingly,

additional specificity is not necessary to ascertain which claims and documents produced in discovery underly the government's fraud allegations set forth in Count I of the Superseding Indictment.

Second, Defendant cites *United States v. Bortnovsky*, 820 F.2d 572 (2d Cir. 1987), in which the United States Court of Appeals for the Second Circuit held a district court abused its discretion in denying a motion for a bill of particulars identifying all allegedly fraudulent insurance claims related to alleged fraudulent burglaries. In *Bortnovsky*, the government produced evidence of twelve burglaries, although only four of the twelve were actually "alleged to be fabricated." *Bortnovsky*, 820 F.2d at 574. This resulted in the defense being "forced to explain events surrounding eight actual burglaries and to confront numerous documents unrelated to the charges pending." *Id.* at 574–75. The facts of *Bortnovsky*, are thus, distinguishable from the present case because, here, there is no mystery as to which claims are alleged to be fraudulent; the Superseding Indictment specifically alleges that all claims submitted on behalf of Gibraltar Nimello, Bahamas Quartis, and Invergasa by Alpha Plus were fraudulent.

Third, and finally in this regard, the defense cites *United States v. Vaid*, 16-cr-763 (LGS), 2017 WL 3891695, (S.D.N.Y. Sept. 5, 2017), in which the United States District Court for the Southern District of New York noted that "[i]n cases involving fraud, courts have required the Government to specify through a bill of particulars which document or transactions it intends to prove are fraudulent if this information is not ascertainable; otherwise, in effect, the burden of proof [may] shift[] to the defendant to prove the documents and transactions are not fraudulent." *Vaid*, 2017 WL 39891695 at *11 (internal citations omitted). In the present case, however, the information sought by Defendant Cammarata *is* "ascertainable" and there is, thus, no risk of the burden impermissibly shifting to the defense, as warned about in *Vaid*. *Id.* Here, the scope of the

alleged fraud encompasses *every* claim submitted by Alpha Plus on behalf of Gibraltar Nimello, Bahamas Quartis, and Invergasa. Therefore, the defense is not being tasked to sift through transactions that the government has already deemed to be non-fraudulent in order to locate the transactions the government alleges are fraudulent. *Vaid*, 2017 WL 39891695 at \*11; *see* ECF No. 108.

Accordingly, the Court finds that the allegations in the Superseding Indictment are sufficient to provide Mr. Cammarata with clear and fair notice of the fraud of which he is being accused, so that he can adequately prepare a defense and avoid unwarranted surprise at trial without having to list out the particularized details of each and every transaction alleged to be fraudulent, as Mr. Cammarata requests. *Urban*, 404 F.3d at 771–2 (finding a bill of particulars is only warranted in circumstances where an indictment has failed to "inform the defendant of the nature of the charges brought against him, to adequately prepare his defense, to avoid surprise during the trial and to protect him against a second prosecution for an inadequately described offense").

Further, the dates on which the allegedly fraudulent claims occurred, to whom they were submitted, for what amounts, or any other of the particularized information Defendant Cammarata requests be provided in a bill of particulars, is available and ascertainable to the Defendant in the discovery. *Urban*., 404 F.3d at 772 (3d Cir. 2005) (finding that "access to discovery further weaken[d] the case for a bill of particulars") (citing *United States v. Giese*, 597 F.2d 1170, 1180 (9th Cir.1979) ("[f]ull discovery ... obviates the need for a bill of particulars")). As previously discussed, due to the nature of the allegations, the Defendant in this circumstance does not have to distinguish which particular transactions made on behalf of Gibraltar Nimello, Bahamas Quartis, or Invergasa are allegedly fraudulent because the manner and means set forth

in the Superseding Indictment clearly explains that the government is alleging all the claims submitted on behalf of these entities were fraudulent. Accordingly, it does not matter which particular litigation the claims were submitted in connection with, nor to whom or when those claims were submitted. It would, therefore, be redundant, unnecessary, and unduly burdensome to require the government to go back through discovery and list each and every claim submitted by Alpha Plus on behalf Gibraltar Nimello, Bahamas Quartis, and Invergasa, when this information is available and ascertainable to the Defendant in discovery, and when the Superseding Indictment sufficiently lays out the manner and means of the fraud allegations.

This same reasoning applies with respect to the Defendant's second request for the identities of the alleged victims. Because the Superseding Indictment alleges clearly that *all* claims submitted on behalf of Gibraltar Nimello, Bahamas Quartis, and Invergasa were fraudulent, it follows that any claims administrator who received such claims was a victim of the alleged fraud conspiracy. In the Superseding Indictment, the government identifies by name, three of these claims administrators, and the remainder are available and ascertainable to the Defendant in the discovery. Again, requiring the government to provide this additional level of detail is unnecessary as the Superseding Indictment sufficiently provides Defendant Cammarata adequate notice of the government's allegations with respect to who the alleged victims are, so that Cammarata can adequately prepare for trial and avoid undue surprise.

Finally, with respect to Mr. Cammarata's third request that the government supply more detailed information about the alleged impersonations set forth in the Superseding Indictment, the Court finds that the allegations set forth in the Superseding Indictment with respect to the alleged impersonations are sufficient to inform Defendant Cammarata of the nature of the

impersonations so as to enable him to adequately prepare his defense and avoid any surprise at trial.

As discussed above, the manner and means section of the Superseding Indictment alleges that the co-conspirators impersonated individuals identified as "T.C. and S.D." who were supposedly in control of Gibraltar Nimello and Bahamas Quartis, as well as individuals who were purportedly employed by brokerage firms. The Superseding Indictment further specifies that these impersonations occurred "in conversations with claims administrators who were attempting to determine the legitimacy of claims submitted by Alpha Plus." ECF No. 108 ¶¶ 31, 32. The government is not required to list each and every specific conversation when the referenced conversations are contained in the discovery and the allegations in the Superseding Indictment describe the nature of the impersonations with sufficient particularity so as to enable the Defendant to identify them and prepare an adequate defense and avoid any surprise at trial. *United States v. O'Driscoll*, 203 F. Supp. 2d 334, 348 (M.D. Pa. 2002) (citing *United States v. Smith*, 776 F.2d 1104, 1111 (3d Cir.1985) ("a bill of particulars is not a discovery device and "is not intended to provide the defendant with the fruits of the government's investigation").

IV.   <u>CONCLUSION</u>

For the reasons set forth above, the Court has denied the Defendant's Motion for Bill of Particulars. *See* ECF No. 137.

**BY THE COURT:**

/s/ *Chad F. Kenney*

_____

**CHAD F. KENNEY, JUDGE**

DATE: October 12, 2022