**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **NO. 21-cr-00427-CFK-01** |
| | **:** | |
| **JOSEPH A. CAMMARATA** | **:** | |


**MEMORANDUM**

**KENNEY, J.**                                          **April 13, 2026**

The Court writes for the benefit of the Parties and assumes familiarity with the facts of the case. Defendant Joseph A. Cammarata, proceeding *pro se*, moves this Court to reconsider its March 27, 2026 Order (ECF No. 484) denying his Renewed Motion to Dismiss for Lack of Subject Matter Jurisdiction. *See* ECF No. 485. For the reasons set forth below, the Court will **DENY** Defendant's Motion for Reconsideration (ECF No. 485).

## I.    DISCUSSION

A motion for reconsideration is an "extremely limited" remedy, which courts grant only to "correct a clear error of law or fact or to prevent manifest injustice," when there is an intervening change in the law, or based on newly discovered evidence. *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011) (citation omitted). Defendant has put forth none of these grounds for reconsideration, arguing only, and repeatedly, that there was a jurisdictional defect in his Superseding Indictment. ECF No. 485 at 1–4; *see also* ECF Nos. 477, 481. Because no such jurisdictional defect exists, the Motion for Reconsideration (ECF No. 485) will be denied.

1

### A. The Apple, Boeing, and Exxon Mobil Class Actions Cited in Defendant's Supplement Filing

Defendant argues there was a conflict of interest in trial management and the trial of his case, citing three class actions as a foundation for his position. *See* ECF No. 486. However, those cases have no connection to, bearing on, or relevance to his prosecution or the class action settlement funds that Defendant defrauded. Defendant identifies the following three class actions (the "Apple, Boeing, and Exxon Mobil Class Actions") in his Supplement to the Motion for Reconsideration (ECF No. 486):

- *In re Apple Inc. Securities Litigation*, No. 4:19-cv-02033 (N.D. Cal. filed Apr. 16, 2019)

- *In re Boeing Co. Aircraft Securities Litigation*, No. 1:19-cv-02394 (N.D. Ill. filed Apr. 9, 2019)

- *Yoshikawa v. Exxon Mobil Corp.*, No. 3:21-cv-00194-N (N.D. Tex. filed Jan. 28, 2021)

*Id.* at 3–4. These cases have nothing at all to do with the fraud for which Defendant was convicted. They were not, in whole or in part, a part of his prosecution nor could they have been. The Defendant had nothing to do with the Apple, Boeing, and Exxon Mobil Class Actions.

Indeed, a simple review of the dockets in these three cases reveals the impossibility of Defendant's position that there was somehow a conflict. None of these three Class Actions had any settlement funds established at the time that Defendant was prosecuted for the above-captioned criminal action. Defendant was convicted on October 26, 2022, ECF No. 194, and was sentenced on June 6, 2023, ECF No. 305. The settlement in the Apple Class Action, *In re Apple Inc. Securities Litigation*, was approved by the district court on September 18, 2024. No. 4:19-cv-02033, 2024 WL 4246282, at *1 (N.D. Cal. Sept. 18, 2024). The Boeing and Exxon Mobil Class Actions are still ongoing and have not yet settled. To date, in the Boeing Class Action, expert discovery is stayed while the Parties brief Plaintiffs' Motion for Reconsideration of one finding in the district

court's Class Certification Order. *In re Boeing Co. Aircraft Sec. Litig.*, No. 1:19-cv-02394 (N.D. Ill.), ECF Nos. 492, 493. The Exxon Mobil Class Action is in the class certification stage. *Yoshikawa v. Exxon Mobil Corp.*, No. 3:21-cv-00194-N (N.D. Tex.), ECF No. 220.

Defendant was prosecuted for criminal activity committed during the time period spanning August 2014 through November 3, 2021—predating the establishment of any settlement funds in the Apple, Boeing, and Exxon Mobil Class Actions. *See* ECF No. 108 at 7, 10; *supra* n.1. Therefore, contrary to Defendant's assertion, members of the Apple, Boeing, and Exxon Mobil Class Actions were not members of the class action funds for which Defendant was prosecuted and they did not suffer losses as a result of Defendant's criminal conduct.

## B. There Is No Jurisdictional Defect in the Superseding Indictment

Defendant has repeatedly moved to dismiss his indictment, both in this Court and before the Third Circuit, for lack of subject matter jurisdiction. *See* ECF Nos. 299, 477, 481, 485; *U.S. v. Cammarata*, No. 23-2110 (3d Cir.), ECF No. 85. On September 29, 2025, the Third Circuit denied Defendant's Motion to Dismiss Indictment and Vacate Conviction for Lack of Subject-Matter Jurisdiction. No. 23-2110 (3d Cir.), ECF No. 86. Nevertheless, Defendant persists in raising this same issue over and over again, *see* ECF Nos. 477, 481, 485, arguing that the courts' summary denials of his multiple motions to dismiss were "the avoidance of adjudication," ECF No. 481 at 2. Here, the Court lays out clearly why Defendant's position has no merit and is belied by the record.

To begin, no one is disputing that the Supreme Court case, *Sprint Communications Co., L.P. v. APCC Services, Inc.*, provides that "the assignee of a claim has standing to assert the injury in fact suffered by the assignor." 554 U.S. 269, 286 (2008) (citation omitted). Defendant argues

3

that paragraph 11 of the Superseding Indictment "says the opposite" of what was held in *Sprint Communications*. ECF No. 481 at 9. Paragraph 11 of the Superseding Indictment states:

> Alpha Plus was a claims aggregator purporting to act on behalf of clients who claimed entitlement to settlements from securities class action and SEC enforcement action settlements. All claimants to such settlements, including those represented by claims aggregators such as Alpha Plus, were required to show two essential facts in order to qualify for an award of settlement funds. First, claimants needed to demonstrate that they had bought shares of the subject security during the time period set forth in the court-approved settlement agreement that resolved the securities class action lawsuit. Second, claimants also needed to show they had suffered damages as a result of their purchase of securities. Generally, such damages were established by proving when the securities had been purchased and sold, and the price that the claimant had paid and received for the securities.

ECF No. 108 at 5. Nothing in Paragraph 11, or indeed, in the entire Superseding Indictment, precludes Defendant from taking the position that the claimants represented by Alpha Plus were assignees of valid claims, and as such, the claims filed by Alpha Plus were not fraudulent. *See id.* In fact, this is the exact position that Defendant took at trial:

> Cammarata testified on his own behalf. He conceded that he had lied to claims administrators by falsely representing that Quartis, Nimello, and Invergasa had traded the securities involved in the class action settlements. But by Cammarata's telling, the scheme was lawful because he had *personally* traded the subject securities and then assigned those trades to Quartis, Nimello, and Invergasa. The trades were all real, he claimed, and his assignments rendered the three entities the "beneficial owners" of the trades, entitling them to settlement funds.

*U.S. v. Cammarata*, 145 F.4th 345, 360 (3d Cir. 2025) (affirming Cammarata's conviction).

Contrary to Defendant's argument that "the Government **explicitly rejected** assignment as a defense," ECF No. 485 at 3, the Government did no such thing and rather argued that Defendant did not personally trade the subject securities and that the assignments were fabricated. The following excerpts from the Government's rebuttal to the Defense's closing argument at trial show that the Government countered Cammarata's assignment defense by pointing out that his version of events was illogical:

4

- "Mr. Cohen was pretty clear about the trade data. The point of the trade data wasn't to assign something from Mr. Cammarata. The point of using trade data that Mr. Cammarata had access to was to make the claims look legitimate." ECF No. 212 at 105.

- "So we have the explanation that Mr. Cammarata came up with about why somehow this was okay, in his mind. These were all his trades. . . . Takes them from his own account, shake them up and put them in false names and somehow that is okay. Well, ladies and gentlemen, if this was so okay why lie about it? Mr. Cammarata had twenty-two thousand pages of trades from Merrill Lynch. Some of those might be eligible for a settlement. Why not file in his own name? Why create another entity where you have to create fake documents to back it up? Why? Because he knows he is participating in a fraud. He knows that if he tells the truth, the claims administrators are not going to pay the claims." *Id.* at 109–10.

- "At the end of the day, all three of our coconspirators know that these trades were not real. They know they have to lie to the claims administrators. That is why at no point do they ever say anything about Quartis was an assignee of Speedroute and Merrill Lynch and Joe Cammarata, and they're real trades made by someone, so please pay us. If that were true, if that would have worked, all three of our coconspirators would not have engaged in this crime." *Id.* at 110–11.

The trial transcript shows that the Government did not claim that Mr. Cammarata was not legally permitted to assign his trades to Quartis and Nimello, but rather challenged that these assignments occurred at all. "It is always permissible for the Government to 'comment on the weakness of the defense case in closing arguments.'" *Cammarata*, 145 F.4th at 363 (quoting *U.S. v. Jackson*, 540

F.3d 578, 596 (7th Cir. 2008)). Upon review of Defendant's conviction on appeal, the Third Circuit confirmed that "[c]ountering a weak defense theory was all the Government did here." *Id.*

In his Renewed Motion to Dismiss, Defendant states, incorrectly, that the Government conceded in its closing argument at trial that Defendant's trades in the subject securities were real and that the assignments were real too. ECF No. 481 at 11–12. Defendant purports to cite the following excerpts from the Government's closing argument:

> "Number 1 is the trades are real. Number 2 is the trades belong to Joe Cammarata. And Number 3 is Mr. Cammarata assigned his claims to Quartis and Nimello." Trial Tr. Day 6 (Oct. 26, 2022) at 80.
>
> [. . .]
>
> "The claims made for Quartis and Nimello were Joe Cammarata's claims. Mr. Cammarata had a right to assign them to Quartis and Nimello… It's normal business practice." *Id.* at 82.

ECF No. 481 at 11. However, these excerpts are actually from the Defense's closing argument. ECF No. 212 at 80–82. The Defense's closing argument spans pages 72 through 103 of the Day 6 trial transcript. *Id.* Thus, a review of the record proves that the Government never conceded that Mr. Cammarata made actual trades in the subject securities and then actually assigned his claims to Quartis and Nimello. These arguments were made, as one might expect, by Mr. Cammarata's defense attorneys. Therefore, the record reveals that during Mr. Cammarata's trial, the Defense put forth an assignment theory before the jury, maintaining that the trades were real and the assignments were real. These are not undisputed facts, as Mr. Cammarata claims in his Motion to Dismiss. *See* ECF No. 481 at 9–12. These were the facts that Mr. Cammarata's attorneys presented to the jury as the truth, but it was up to the jury to weigh the evidence and arrive at its own

conclusion about what happened. *Musacchio v. U.S.*, 577 U.S. 237, 243 (2016) (stating that it is "the jury's role to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts" (internal quotations and citation omitted)).

The jury returned a verdict of guilty, ECF No. 194, indicating that it disbelieved Mr. Cammarata's version of events. Mr. Cammarata had his opportunity to persuade the jury that his trades were real and the assignments were real. He failed to do so, and the jury found him guilty on all counts. *See id.* Mr. Cammarata cannot now attack the Superseding Indictment by alleging that it prevented him from proving his innocence and showing the jury that his trades in the subject securities were real and that he really assigned his personal claims to Quartis and Nimello. For the reasons stated, the Superseding Indictment contains no jurisdictional defect and Defendant's conviction stands.

## II.    CONCLUSION

There is no basis for reconsidering the Court's prior Order (ECF No. 284) denying Defendant's Renewed Motion to Dismiss for Lack of Subject Matter Jurisdiction. Accordingly, Defendant's Motion for Reconsideration (ECF No. 485) will be **DENIED**. An appropriate Order will follow.

**BY THE COURT:**

**/s/ Chad F. Kenney**

_____

**CHAD F. KENNEY, JUDGE**

7