IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **NO. 21-cr-00427-CFK-01** |
| | : | |
| **JOSEPH A. CAMMARATA** | : | |

**MEMORANDUM**

**KENNEY, J.** **October 29, 2026**

Before the Court is Defendant Joseph A. Cammarata's *pro se* Amended Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (the "Motion") (ECF No. 489). In 2022, following a jury trial, Defendant was convicted of conspiracy to commit mail and wire fraud, wire fraud, conspiracy to commit money laundering, money laundering, and aiding and abetting based on a scheme where he submitted fraudulent claims to administrators of securities class action settlement funds. ECF No. 194. Both of Defendant's co-conspirators testified against him at the jury trial. ECF Nos. 204–212. Defendant also testified on his own behalf. *Id.* This Court sentenced Defendant to 120 months of imprisonment on June 6, 2023. ECF Nos. 305, 307, 310. After a failed appeal to the Third Circuit, Defendant filed the instant Motion on April 21, 2026. ECF No. 489. For the reasons stated below, the Motion (ECF No. 489) will be **DENIED**.

## I. BACKGROUND

The facts are drawn in part from the Third Circuit's summary of the case in its opinion affirming the jury's guilty verdict and sentence for Defendant on direct appeal. *See United States v. Cammarata*, 145 F.4th 345, 356 (3d Cir. 2025). In 2014, Defendant and his business partners created a company to serve as a claims aggregator. *Id.* The company made money by completing

the necessary paperwork and submitting claims on behalf of members to a class action in exchange for a percentage of the clients' monetary reward. *Id.* From 2014 through 2021, Defendant's company submitted falsified claims primarily on behalf of three clients, each of which was a shell company acquired by Defendant and his business partners. *Id.* at 356–57. The relevant claims were made to the administrators of securities class action settlements. *Id.* at 357. The claims contained fabricated information, as the shell companies had never actually traded in the relevant securities. *Id.* at 357–58. Once the scheme was discovered, Defendant's business partners both pled guilty in October 2022. *Id.* at 359. Defendant proceeded to trial, where the jury found him guilty on all counts. *Id.* at 360. *See* ECF No. 194. In June 2023, Defendant was sentenced to 120 months' imprisonment. ECF No. 305. Defendant appealed to the Third Circuit. *Id.* The Third Circuit affirmed Cammarata's convictions for conspiracy, wire fraud, and money laundering. *Id.* at 383. After the Third Circuit's decision, Defendant filed the instant motion, which presents six claims for relief. ECF No. 489. For the foregoing reasons, the Court finds that none of these grounds entitles Defendant to the relief sought.

## II. LEGAL STANDARD

An inmate in federal custody may challenge the validity of his sentence under 28 U.S.C. § 2255 by filing a petition for a writ of habeas corpus. *See Okereke v. United States*, 307 F.3d 117, 120 (3d Cir. 2002). Pursuant to 28 U.S.C. § 2255, a court may "vacate, set aside or correct" a sentence that "(1) was imposed in violation of the Constitution or laws of the United States; (2) was imposed by a court lacking jurisdiction; (3) was in excess of the maximum authorized by law; or (4) is otherwise subject to collateral attack." *United States v. Small*, 747 F. Supp. 3d 817, 821 (E.D. Pa. 2024) (quoting 28 U.S.C. § 2255(a)). "A section 2255 petition is not a substitute for an

appeal, nor may it be used to relitigate matters decided adversely on appeal." *Gov't of V.I. v. Nicholas*, 759 F.2d 1073, 1074–75 (3d Cir. 1985) (citations omitted).

A prisoner's *pro se* habeas petition should be construed liberally. *See Lewis v. Attorney General of U.S.*, 878 F.2d 714, 722 (3d Cir. 1989). The Court accepts the truth of the petitioner's allegations when reviewing a § 2255 motion unless those allegations are "clearly frivolous on the basis of the existing record." *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005). A court is required to hold an evidentiary hearing when the petition "allege[s] any facts warranting relief under § 2255 that are not clearly resolved by the record." *See United States v. Tolliver*, 800 F.3d 138, 141 (3d Cir. 2015) (quoting *Booth*, 432 F.3d at 546) (alteration in original). However, "bald assertions and conclusory allegations do not provide sufficient ground[s] . . . to require an evidentiary hearing." *United States v. Donahue*, 792 F. App'x 165, 168 (3d Cir. 2019)(quoting *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 301 (3d Cir. 1991).

Claims for ineffective assistance of counsel are governed by the two-pronged standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), and its progeny. *See Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (acknowledging that *Strickland* governs claims for ineffective assistance of counsel). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness" such that petitioner was effectively denied "counsel" as guaranteed by the Sixth Amendment, with reasonableness being judged by the professional norms prevailing at the time that counsel rendered assistance. *Strickland*, 466 U.S. at 688, 669. In evaluating the reasonableness of counsel's performance, courts "must be highly deferential" and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Under the second *Strickland* prong, a petitioner must demonstrate that counsel's errors were prejudicial—that is, that

"there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability" is one that is "sufficient to undermine confidence in the outcome." *Id.* at 694. Further, "[t]he effect of counsel's inadequate performance must be evaluated in light of the totality of the evidence at trial: 'a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.'" *United States v. Gray*, 878 F.2d 702, 711 (3d Cir. 1989) (quoting *Strickland*, 466 U.S. at 696). In ruling on a § 2255 petition, the court may address the prejudice prong first "and reject an ineffectiveness claim solely on the ground that the defendant was not prejudiced." *Rolan v. Vaughn*, 445 F.3d 671, 678 (3d Cir. 2006).

## III. DISCUSSION

Defendant raises six claims for habeas relief in his Motion. ECF No. 489 at 3. Claim One alleges lack of subject matter jurisdiction. Claim Two alleges denial of counsel of choice at trial in violation of the Sixth Amendment of the United States Constitution. Claim Three alleges ineffective assistance of trial counsel, and Claim Four alleges ineffective assistance of appellate counsel. Claim Five alleges violations of *Brady* obligations by the Government. Claim Six alleges constructive amendment. None of the claims entitle Defendant to relief. The Court will address each claim in turn.

### A. Claim One: Lack of Subject Matter Jurisdiction

In his Motion, Defendant raises, yet again, the issue of subject matter jurisdiction, arguing that "this Court never acquired subject-matter jurisdiction over this prosecution." ECF No. 489 at 6. Defendant has raised this issue, ad nauseam, both in his direct appeal and in numerous post-trial filings. *See* ECF Nos. 186, 299, 481, 485. It is not, however, a subject matter jurisdiction issue at all. Defendant is, instead, arguing a substantive point: that "he had personally traded the

subject securities and then assigned those trades[.]" ECF No. 489 at 7 (quoting *United States v. Cammarata*, 145 F.4th 345, 360 (3d Cir. 2025)).

The Court previously addressed at length Defendant's rehashed arguments regarding his assignment defense, explaining that Defendant presented his assignment theory to the jury at his trial but that the jury "disbelieved Mr. Cammarata's version of events. Mr. Cammarata had his opportunity to persuade the jury that his trades were real and the assignments were real. He failed to do so, and the jury found him guilty on all counts." ECF No. 487 at 7. The Court incorporates the reasoning set out in its April 13, 2026 Memorandum Opinion regarding the issue of subject matter jurisdiction as if fully set out herein. *Id.* at 3–7. For the reasons stated in the April 13, 2026 Memorandum Opinion, the Court rejects Defendant's repeated attempt to re-litigate a factual issue that was conclusively decided by the jury at his trial. Claim One is denied.

**B. Claim Two: Denial of Counsel of Choice**

Defendant next argues that the Court violated his Sixth Amendment right to remove trial counsel and retain counsel of choice for sentencing and appeals. Defendant claims, without any factual support in the record, that the Court's asset freeze prevented him from using the frozen funds to retain counsel. ECF No. 489 at 15–16. Defendant's brief presents a revisionist history of the Court's decisions. Upon consideration of the record, it is clear that the Court repeatedly permitted disbursement to Defendant to retain the counsel of his choice. *See, e.g.*, *SEC v. Cammarata*, No. CV 21-4845 (E.D. Pa.) (the "SEC Case"), ECF Nos. 55, 121, 139, 254 (all ordering partial release of assets to Defendant for the retention of counsel). On December 22, 2021, the Court approved the release of $350,000 to Defendant to pay counsel in the present criminal case. SEC Case, ECF No. 55. On July 13, 2022, the Court approved the release of $2,000,000 from a particular account to Defendant to pay counsel in the present criminal case.

SEC Case, ECF No. 121. Following the Court's order, the Parties submitted that further liquidation was required, as the particular account from which the Court permitted liquidation was short of the $2,000,000 requested. SEC Case, ECF No. 138. The Court approved to address "the shortage." SEC Case, ECF No. 139. Without acknowledging that the Court released to Defendant over $2 million for retention of counsel, Defendant takes issue with four specific orders from the Court which allegedly denied his petition and motions for release of funds. ECF No. 489 at 15–16.

The first motion that Defendant points to does not relate to the release of funds at all. SEC Case, ECF No. 177. In the Order that Defendant points to as violating his Sixth Amendment rights, the Court denied a petition, which related to Defendant's access to a discovery laptop. *Id.* Further, the Court only denied the petition "because this case is stayed and in suspense ([SEC Case,] ECF No. 174), including discovery as to all parties." *Id.* The denial was also without prejudice to be renewed upon removal of the stay, as explicitly stated by the Court's order. *Id.* (finding that "Defendant may file a renewed petition" following "removal of the stay").

Next, Defendant points to the Court's January 4, 2023 Order which denied release of funds that were requested specifically to retain Cohen Williams as counsel. Cohen Williams, however, did continue to represent Defendant, despite the denial. SEC Case, ECF Nos. 189–190. Not only does this prove that Defendant's rights were not violated by the denial, as he continued to be represented by counsel of choice. *See United States v. Gonzalez-Lopez*, 584 U.S. 140, 148 (2006). But this also demonstrates that the Court's denial was proper, as additional disbursement was not required to retain Cohen Williams. SEC Case, ECF No. 190 (denying Defendant's Motion for Release of Funds based upon "the Court's understanding that $2 million was adequate to provide representation through trial, post-trial motions practice, and sentencing[.]").

Next, on May 10, 2023, the Court denied Defendant's emergency motion to delay his sentencing and to transfer funds to new counsel. ECF Nos. 279, 284. The new counsel would have been his fourth counsel of record in this criminal case. *Id.* Cohen Williams was the third in a continuum of highly experienced and competent attorneys. *See id.* The motion was filed shortly before Defendant's sentencing, which had already been rescheduled, and was paired with a request to delay sentencing even further. ECF No. 279. At that time, the Court had already assured that Defendant would have representation by Cohen Williams at sentencing, via the previous disbursement order for $2 million. SEC Case, ECF Nos. 121, 139; *see also* ECF No. 284

The Court did not find good cause to further delay sentencing, as Cohen Williams, Defendant's previous counsel of choice, was ready and capable in representing Defendant. *See* ECF No. 284. Indeed, the outcome of Defendant's sentencing speaks to the competency of his counsel. Cohen Williams achieved a sentence for Defendant which was well below the guideline range sentence presented by the probation officer. ECF No. 310 at 49:12–21. The guideline range sentence was 168–210 months. *Id.*; see also *id.* at 87:9–10. Defendant, however, was sentenced to 120 months, in large part due to the competent representation of Cohen Williams. *See* ECF No. 298. Defendant received this sentence despite not taking any responsibility for his actions during his allocatur. ECF No. 310 at 110:20–121:22. In the Third Circuit, the Court has discretion to deny last minute requests for substitution of counsel which would result in delaying the relevant proceedings with good cause. *See United States v. Hodge*, 870 F.3d 184, 201 (3d Cir. 2017). Based on the previous disbursement, which ensured Cohen Williams' representation at sentencing and the demonstrated competency of Cohen Williams throughout the proceedings, the Court found that change in counsel was not appropriate in the run-up to sentencing. The denial, therefore, did not violate Defendant's Sixth Amendment, as he was represented by his original counsel of choice,

who was ready and capable of the representation, and the circumstances otherwise favored denial to avoid further delay in sentencing. *See Hodge*, 870 F.3d at 201.

Lastly, on July 27, 2023, the Court denied a joint motion for release of funds to Defendant's ex-wife. SEC Case, ECF No. 291. The funds at issue in this motion were to pay Defendant's ex-wife in a divorce settlement and could not have been used for retention of counsel. SEC Case, ECF No. 290. Indeed, there is nothing to indicate that Defendant's ex-wife would use these funds, distributed as a result of their divorce proceedings, for attorney fees on behalf of her ex-husband. *Id.* Furthermore, the Court only denied this motion to instruct that the funds be placed in escrow. SEC Case, ECF No. 291. Indeed, upon consideration of the court handling Defendant's divorce proceedings, the Court denied the motion without prejudice, instructing that an amended motion be filed for the release of funds to a segregated escrow account to ensure compliance with the marital settlement agreement *Id.* Once refiled, the Court granted this motion and permitted the release of funds to Defendant's ex-wife to comply with the divorce judgment. SEC Case, ECF No. 296. Not only does this decision not implicate the Defendant's Sixth Amendment rights, but the funds in question were actually released. For these reasons, none of the Court's decisions denying disbursement of funds implicated Defendant's Sixth Amendment rights.

Defendant makes various additional one-off arguments in this section of his brief, all of which are factually incorrect. He first claims that "the Government conditioned release" of funds "on the forced liquidation and repatriation of a Barbados life insurance policy's brokerage account[.]" ECF No. 489 at 16. He adds that "[t]he present unrealized damage from that forced liquidation alone exceeds $38 million and continues to grow daily." *Id.* Peculiarly, in his brief, Defendant explicitly states that the brokerage account in question is "property not owned by, held for the benefit of, or under the control of Petitioner." *Id.* If this is true, he does not explain how,

then, he could have been harmed by the liquidation. More significantly, however, is the fact that the liquidation was initiated by Defendant's prospective appellate counsel by their application for the release of frozen funds. SEC Case, ECF No. 210. The Court granted the liquidation and repatriation based on Defendant's prospective counsel repeatedly representing that Defendant was agreeable in order to pay the appellate counsel's fees. *See* SEC Case, ECF Nos. 210, 220, 223, 251, 254.

Next, Defendant asserts that the Court's decisions "forced [him] to proceed pro se at the most critical stages of the criminal case: post-trial motions . . . sentencing . . . and the related tax trial in its entirety." ECF No. 489 at 16. Again, this is blatantly false. Defendant was represented by counsel at all stages in this case. At his request, as discussed *infra*, the Court permitted Defendant to submit post-trial motions in a "hybrid" capacity. ECF No. 237 at 1 ("I come before this court requesting the permission of hybrid representation for the purpose of filing a pro se motion for acquittal . . ."). Yet, for his criminal appeal, the Court permitted disbursement. SEC Case, ECF No. 223 (finding that "Whatever Defendant's Sixth Amendment rights may be in this novel situation, ***the Court is mindful that the deprivation of right to counsel is 'complete when the defendant is erroneously prevented from being represented by the lawyer he wants.'*** Accordingly, on balance, the Court finds that the equities ***favor modifying the asset freeze to secure counsel of Defendant's choice on criminal appeal***." (emphasis added) (internal citation omitted)); *see also* SEC Case, ECF No. 254 (granting disbursement of funds to appellate counsel).

Because the Defendant's Petition misrepresents the facts on the record, and he accordingly cannot show that his Sixth Amendment rights were violated, Claim Two is denied.

### C. Claims Three and Four: Ineffective Assistance of Trial Counsel and Appellate Counsel

Defendant alleges that his trial counsel and appellate counsel were constitutionally ineffective under *Strickland v. Washington*, 466 U.S. 668, 687 (1984). ECF No. 489 at 17. Defendant argues that trial counsel should have filed a pretrial motion to dismiss based on *Sprint Communications Co., L.P. v. APCC Services, Inc.*, 554 U.S. 269, 286 (2008) and that appellate counsel should have presented *Sprint* as an independent ground for reversal. ECF No. 489 at 17, 20. However, both this Court and the Third Circuit have found no merit to Defendant's argument based on *Sprint*. *See United States v. Cammarata*, 145 F.4th 345, 363 (3d Cir. 2025) (commenting that the prosecutor in this case "argued, quite understandably, that Cammarata's theory that he assigned his personal trades . . . made no sense"); *see also* ECF No. 487 at 4–6. Notably, since the same argument brought on appeal was rejected, there is no reason as to why appellate counsel presenting this argument differently would have resulted in a different outcome at the Third Circuit. *Id.* at 363. Therefore, Cammarata has not shown ineffective assistance of counsel by showing that counsel failed to raise an argument which this Court has repeatedly rejected. *See United States v. Kolodesh*, 415 F. Supp. 3d 613, 625 (E.D. Pa. 2019).

Defendant further argues that his trial counsel was ineffective for not moving to dissolve the asset freeze ordered by this Court's temporary restraining order, and his appellate counsel was ineffective for not arguing the invalidity of the asset freeze on appeal. ECF No. 489 at 18, 21. However, monetary penalties cannot justify relief under 28 U.S.C. § 2255(a), which provides relief to those in custody. *United States v. Ross*, 801 F.3d 374, 382 (3d Cir. 2015). Furthermore, the asset freeze was issued pursuant to a temporary restraining order and subsequent preliminary injunction in the parallel civil SEC case. *See* SEC Case. Therefore, counsels' failure to argue as to the validity of the asset freeze is not relevant to this Court's evaluation of the instant motion pursuant to 28 U.S.C. § 2255.

Next, Defendant argues that trial counsel was ineffective for not objecting to the Court's failure to issue a Rule 5(f) advisement. ECF No. 489 at 17. The trial record, however, demonstrates that a Rule 5(f) advisement was given to Defendant at his initial appearance on arrest and again at his arraignment on the superseding indictment. *See* ECF Nos.496-1 (Tr. 11-9-21) at 3, 496-2 (Tr. 9-20-22) at 4. Therefore, an objection from trial counsel to the Court's failure to issue such an advisement would not have made sense, as the advisement was given. *Id.*

Defendant, further, alleges that trial counsel failed to file timely post-trial motions under Federal Rule of Criminal Procedure 29 for judgement of acquittal and under Federal Rule of Criminal Procedure 33 for a new trial. ECF No. 489 at 18. However, Defendant requested that he be permitted to file a motion pursuant to Fed. R. Cr. P. 29 "as hybrid representation," further specifying that he would be filing this motion, and future post-trial motions on his own behalf. ECF No. 237 at 2. The Court permitted Defendant to proceed in this "hybrid" capacity and extended applicable deadlines. Defendant then, indeed, filed a lengthy post-trial motion. ECF No. 264 (moving for acquittal under Rule 29 or a new trial under Rule 33). When a defendant elects to proceed in a hybrid capacity, they cannot then argue "that the quality of his own defense amounts to a denial of effective assistance of counsel." *United States v. Tilley*, 326 F. App'x 96, 97 (3d Cir. 2009) (quoting *Faretta v. California*, 422 U.S. 806, 834 n. 46 (1975) (discussing *pro se* representation)). Because Defendant requested "hybrid representation," he cannot now assert ineffective assistance of trial counsel, as he elected to bring these motions himself. *See id.*; *see also* ECF No. 237 at 1.

Next, Defendant argues that his appellate counsel was ineffective for failing to argue on appeal that the Government constructively amended the indictment at trial. ECF No. 489 at 20. However, his appellate counsel did raise his constructive amended argument on appeal, and the

Third Circuit addressed it fully. *See United States v. Cammarata*, 145 F.4th 345, 360–63 (3d Cir. 2025) (rejecting Defendant's constructive amendment argument). Therefore, there is no merit to this claim.

Lastly, Defendant argues that his appellate counsel was ineffective for failing to transfer his case to another circuit court. ECF No. 489 at 21. Defendant alleges that one of the attorneys suing him in the SEC Case had a spouse working at the Third Circuit, and thus, there was a conflict of interest with the Third Circuit evaluating his appeal. *Id.* However, federal appellate courts only have jurisdiction to review decisions made by trial courts in their respective circuits. 28 U.S.C. § 1294(1). No other circuit court had jurisdiction to review Defendant's criminal appeal from the Eastern District of Pennsylvania. *Id*. Thus, Defendant's appellate counsel had no ability to transfer Defendant's appeal to another circuit court and was not ineffective in this regard. For these reasons, Defendant has not demonstrated ineffective assistance of trial counsel or appellate counsel under the *Strickland* standard. Claims Three and Four are denied.

**D. Claim Five: *Brady* Violations**

Defendant alleges that the Government violated its *Brady* obligations. To successfully prove a *Brady* violation, a defendant must show that: (1) the evidence favored the accused "because it is exculpatory, or because it is impeaching"; (2) the evidence "must have been suppressed by the State, either willfully or inadvertently"; and (3) the evidence "must have been material such that prejudice resulted from its suppression." *Dennis v. Sec'y, Pennsylvania Dep't of Corr.*, 834 F.3d 263, 284 (3d Cir. 2016) (quoting *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)).

Defendant argues that the Government did not inform him of the Supreme Court opinion in *Sprint Communications Co., L.P. v. APCC Services, Inc.*, 554 U.S. 269, 286 (2008). *Brady*

obligations require disclosure of, specifically, factual evidence. *Dennis*, 834 F.3d at 284. While Defendant argues that *Sprint* is legal precedent helpful to his case, the opinion is not factual evidence. ECF No. 489 at 22. Furthermore, Defendant had access to the *Sprint* opinion throughout his trial, as demonstrated by the fact that Defendant relied on the opinion in his trial testimony. *Id.* at 22–23. The opinion was also published in various reporters and was, thus, not suppressed by the Government. *See Sprint Communications Co., L.P. v. APCC Services, Inc.*, 554 U.S. 269, 286 (2008).

Next, Defendant argues that the Government failed to share with him certain records related to the District of New Jersey's separate prosecution of Defendant for tax crimes. *See United States v. Joseph Cammarata*, No. CR 22-639 (D.N.J. 2022). The Court does not have jurisdiction to adjudicate any challenges related to Defendant's conviction in the District of New Jersey. 28 U.S.C. § 2255(a) ("A prisoners in custody under sentence of a court established by Act of Congress . . . may move the court **which imposed the sentence** to vacate, set aside or correct the sentence") (emphasis added). Thus, the Court finds that the Government's *Brady* obligations have been met with regard to the *Sprint* opinion. The Court will not opine on the challenge related to Defendant's conviction in the District of New Jersey.

**E. Claim Six: Constructive Amendment of the Indictment**

Defendant raises, again, the argument that the Government's closing argument constructively amended the superseding indictment. ECF No. 489 at 25. On appeal, however, the Third Circuit fully examined the argument which Defendant now reasserts. *United States v. Cammarata*, 145 F.4th 345, 361 (3d Cir. 2025). The Third Circuit found that the prosecutor's closing argument had not "broadened its claim of fraud in the course of countering [Defendant's] assignment defense." *Id.* at 363. Instead, the Third Circuit noted that the prosecutor's closing

argument argued "that Cammarata's theory that he assigned his personal trades to Nimello, Quartis, and Invergasa made no sense," which does not constitute constructive amendment *Id.* (citing *United States v. Jackson*, 540 F.3d 578, 596 (7th Cir. 2008) and *United States v. McAnderson*, 914 F.2d 934, 945 (7th Cir. 1990)). Thus, Claim Six is denied.

## IV. CONCLUSION

For the foregoing reasons, the Court will **DENY** Defendant's *pro se* Amended Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (ECF No. 489). Additionally, because the record is clear on the facts pertaining to the issues raised in Defendant's Motion, as discussed above, an evidentiary hearing is not necessary to resolve this case. *Hill v. Lockhart*, 474 U.S. 52, 60 (1985). No certificate of appealability will issue because Defendant has not made a substantial showing of the denial of a constitutional right under 28 U.S.C. § 2253(c)(2).

An appropriate Order will follow.

**BY THE COURT:**

**/s/ Chad F. Kenney**

**CHAD F. KENNEY, JUDGE**